**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**David Edward FECZKO, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 18, 2010.

Filed Dec. 22, 2010.

William T.C. Tully, Harrisburg, for appellant.

Matthew P. Smith, Assistant District Attorney, Carlisle, for Commonwealth, appellee.

BEFORE: FORD ELLIOTT, P.J., MUSMANNO, BENDER, BOWES, DONOHUE, SHOGAN, ALLEN, OLSON and OTT, JJ.

OPINION BY BENDER, J.:

David Feczko (Appellant) appeals from the judgment of sentence entered following his convictions for DUI–General Impairment, DUI–Highest Rate, and Driving on Roadways Laned for Traffic. *See* 75 Pa.C.S. §§ 3802(a)(1), (c), 3309(1). Appellant contends that the suppression court erred in denying Appellant's motion to suppress, which challenged the basis of the traffic stop. We conclude that the stop was legal because the officer had probable cause to believe that Appellant had committed a vehicle code violation. Accordingly, we affirm.

The relevant facts and procedural history are as follows. At approximately 10:00 p.m. on August 19, 2008, Pennsylvania State Police Trooper Krista Miller was on duty and traveling eastbound on SR 174 in her marked patrol car when she came upon Appellant's silver Cadillac. N.T. Suppression, 4/28/09, at 5. Trooper Miller observed the left tires of Appellant's vehicle briefly cross over the double yellow median line and enter the oncoming lane of travel while negotiating a curve in the road. *Id.* Appellant's vehicle then gradually swayed within the lane, crossing over the white fog line two or three times. *Id.* The vehicle's left tires then briefly drifted over the double yellow median line for a second time. *Id.* At this point, Trooper Miller activated her emergency lights and siren and conducted a traffic stop of Appellant's vehicle. Trooper Miller testified that the basis for the stop was "reasonable suspicion due to the fact that the individual was weaving within his lane and also crossed out of his lane of travel on numerous occasions." *Id.* at 8. Trooper Miller did not indicate that she conducted the stop on suspicion of DUI.

Furthermore, the record shows that after Trooper Miller stopped Appellant's vehicle and approached him, she noticed an odor of alcohol on Appellant's breath. N.T. Trial, 5/21/09, at 3. In addition, Appellant's eyes were red and glassy and his speech was slurred. *Id.* Appellant also failed a breathalyzer test, and a subsequent blood alcohol test showed an alcohol content level of .174 percent. *Id.* at 4. Based on the foregoing, the Commonwealth charged Appellant with the aforementioned offenses.

Prior to trial, Appellant filed a motion to suppress claiming that the arresting officer did not possess the requisite reasonable suspicion to initiate a traffic stop of Appellant's vehicle. A hearing on the motion was held on April 28, 2009, at which the suppression court denied Appellant's motion. Following a bench trial, and based on a stipulated record, Appellant was convicted on all charges and sentenced to ninety days' to five years' imprisonment and a $1,525.00 fine plus costs. Appellant

then filed this appeal raising the following question for our review:

(1) DID THE OFFICER HAVE THE REQUISITE REASONABLE ARTICULABLE SUSPICION UPON WHICH TO BASE THE TRAFFIC STOP OF APPELLANT'S CAR?

Brief for Appellant at 4.

▆▆▆ Our standard for reviewing an order denying a motion to suppress is well established.

We are limited to determining whether the lower court's factual findings are supported by the record and whether the legal conclusions drawn therefrom are correct. We may consider the evidence of the witnesses offered by the Commonwealth, as verdict winner, and only so much of the evidence presented by [the] defense that is not contradicted when examined in the context of the record as a whole. We are bound by facts supported by the record and may reverse only if the legal conclusions reached by the court were erroneous.

*Commonwealth v. Hughes,* 908 A.2d 924, 927 (Pa.Super.2006).

Appellant's question concerns the quantum of cause required in order for a law enforcement officer to stop a vehicle for an alleged violation of the Vehicle Code. This area of law has experienced recent changes. Therefore, we find it necessary to summarize the development of Pennsylvania's law concerning the requisite cause for a traffic stop prior to addressing Appellant's question presently before this Court.

The relevant statutory authority is 75 Pa.C.S. § 6308(b), which states:

(b) **Authority of police officer.**— Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308(b). The present form of Section 6308(b) reflects its amendment by the Pennsylvania Legislature in 2004, which inserted a reasonable suspicion standard. The pre-amended version of Section 6308(b) required that an officer have "articulable and reasonable grounds" to suspect a violation. 75 Pa.C.S. § 6308(b) (1998), *amended by* 75 Pa.C.S. § 6308(b) (2004).

The "articulable and reasonable grounds" standard required by the pre-amended version of Section 6308(b) was interpreted by our Supreme Court in *Commonwealth v. Whitmyer,* 542 Pa. 545, 668 A.2d 1113 (1995). In *Whitmyer,* the defendant was stopped for a suspected violation of 75 Pa.C.S. § 3361, which prohibits driving at an unsafe speed. The defendant was ultimately charged with DUI, possession of marijuana, and failing to drive at a safe speed.

The Supreme Court held that there was no reasonable or articulable basis for the officer to suspect a violation of the Motor Vehicle Code because the officer had not paced the defendant for the required three-tenths of a mile under 75 Pa.C.S. § 3368(a), and the officer's personal estimate of speed did not amount to probable cause. The court noted that "this is not a case where further investigation would lead to a discovery of a violation of the Vehicle Code" because "there is no further evidence that could be obtained from a subsequent stop and investigation." *Id.* at 1118. The court's ruling rejected the Commonwealth's argument that the prior version of Section 6308(b) demanded only

a reasonable suspicion of a Motor Vehicle Code violation. Instead, the court equated "articulable and reasonable grounds" with a probable cause standard. *Id.* at 1116.

In the wake of the Supreme Court's holding in *Whitmyer,* there followed a body of cases that reaffirmed a probable cause standard for vehicle stops based on violations of the Motor Vehicle Code under the pre-amended version of Section 6308(b). *See Commonwealth v. Gleason,* 567 Pa. 111, 785 A.2d 983 (2001); *Commonwealth v. Wituszynski,* 567 Pa. 49, 784 A.2d 1284 (2001); *Commonwealth v. Cook,* 865 A.2d 869 (Pa.Super.2004); *Commonwealth v. Battaglia,* 802 A.2d 652 (Pa.Super.2002). In *Gleason,* the court reflected on the semantic difference between the language of the statute and a probable cause standard and reasoned that "when we balance the underlying interests of the individual and the government, *the two standards amount to nothing more than a distinction without a difference." Gleason,* 785 A.2d at 988.

Though *Whitmyer* and its progeny required probable cause for vehicle stops based on a violation of the Motor Vehicle Code, this quantum of cause had not been constitutionally necessary for all vehicle stops. *See Commonwealth v. Murray,* 460 Pa. 53, 331 A.2d 414, 418 (1975). In *Murray,* our Supreme Court reviewed the legality of a vehicle stop based on suspected criminal activity. The court stated:

> The United States Supreme Court in [*Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ] and in *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), has suggested that even in the absence of probable cause there may be, under certain circumstances, justification for a limited intrusion upon the privacy of an individual. Under these decisions the Court has suggested that a brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining additional information may in fact be reasonable although the officer at that time did not possess probable cause that would justify an arrest. In the *Terry, supra* and *Adams, supra* decisions, the Court was required to struggle with the balancing of the right of society and the right of an individual in street encounters. Because a motorist's extreme mobility may otherwise allow him to avoid police confrontation, the State has an equally strong interest in these cases in stopping a moving vehicle to freeze momentarily a situation of suspected criminality. However, these decisions have made it clear that to justify the intrusion the police officer must be able to point to specific and articulable facts which taken together with rational inferences from those facts reasonably warranted the intrusion. *See Adams v. United States* [*Williams* ], *supra; Terry v. Ohio, supra.* Thus, it is also clear that an investigative stop of a moving vehicle[,] to be valid[,] must be based upon objective facts creating a reasonable suspicion that the detained motorist is presently involved in criminal activity.

*Id.* (citation omitted).

Our Supreme Court's rulings in *Murray* and twenty years later in *Whitmyer* articulated distinct, not conflicting, standards for a traffic stop. The court in *Murray* held that a reasonable suspicion standard was a constitutional threshold of cause to justify a vehicle stop based on suspected criminal activity. The court also stated, however, that probable cause was required when the basis for a traffic stop was a suspected violation of the Commonwealth's Motor Vehicle Code.[1] *Murray,* 331 A.2d

---

**1.** *Murray* was decided prior to the enactment

of 75 Pa.C.S. § 6308(b). The statutory au-

at 416–17 ("If the alleged basis of a vehicular stop is to permit a determination whether there has been compliance with the Motor Vehicle Code of this Commonwealth, it is encumbent [sic] upon the officer to articulate specific facts ... which would provide probable cause...."). *Whitmyer* cited this language with approval when the court interpreted the "articulable and reasonable grounds" standard contained in the prior version of Section 6308(b) as equivalent to probable cause. *Whitmyer*, 668 A.2d at 1116.

Thus, this distinction was directly at issue when the legislature sought to amend Section 6308(b) to its current form. In *Commonwealth v. Sands*, 887 A.2d 261 (Pa.Super.2005), we upheld the constitutionality of the "reasonable suspicion" standard set forth in the 2004 amendment to Section 6308(b) as applied to vehicle stops based on an officer's reasonable suspicion of DUI. *Sands* acknowledged the legislature's motivation to address DUI concerns through the 2004 amendment.

> Clearly, the legislature's intent was to permit officers who suspect that an operator of a vehicle has committed a serious offense, such as DUI or homicide by vehicle, to stop the vehicle based upon a reasonable suspicion rather than the heightened standard of probable cause. And the legislature reasoned that such an amendment would be constitutional since existing constitutional precedent actually permits police officers to stop a vehicle based upon reasonable suspicion that criminal activity is afoot.

*Sands*, 887 A.2d at 268 (citation omitted).

The arresting officer in *Sands* stopped the appellant's vehicle based on a suspected DUI. *Id.* at 263. The appellant was ultimately charged with driving under the influence and violations of the Motor Vehicle Code. *Id.* at 264. Prior to trial, the appellant filed a motion to suppress evidence of the DUI based on a claim that the search was illegal. *Id.* The motion was denied and the appellant was convicted on all charges. *Id.* On appeal, the appellant challenged the suppression court's ruling and claimed that Section 6308(b) was unconstitutional as applied by the trial court. In affirming the conviction, we focused on the investigative potential of a vehicle stop based on a reasonable suspicion of DUI as compared to other suspected violations of the Motor Vehicle Code. We stated:

> Whereas our Supreme Court identified *Whitmyer* as a case where further investigation would not lead to a discovery of a violation of the Vehicle Code because there was no further evidence that could be obtained from a subsequent stop and investigation that would warrant a citation for driving at an unsafe speed, *see Whitmyer*, 542 Pa. 545, 668 A.2d 1113 at 1118, a suspected violation for DUI is in fact a scenario where further investigation almost invariably leads to the most incriminating type of evidence, *i.e.*, strong odor of alcohol, slurred speech, and blood shot eyes. This type of evidence can only be obtained by a stop and investigation.
>
> In contrast, it is hard to imagine that an officer following a vehicle whose driver is suspected of driving at an unsafe speed would discover anything further from a stop and investigation. Similarly, if an officer who observes a driver run a red light or drive the wrong way on a one-way street, the officer either does or does not have probable cause to

thority at the time, 75 P.S. § 1221(b), was far more expansive and permitted an officer to stop any vehicle "for the purpose of inspecting the said vehicle, as to its equipment and operation, or manufacturer's serial number or engine number, and securing of such other information as may be necessary." Act of April 29, 1959, P.L. 58, § 1221 (codified as amended at 75 P.S. § 1221(b)) (repealed 1976).

believe there has been a violation of the Vehicle Code. A subsequent stop of the vehicle is not likely to yield any more evidence to aid in the officer's determination.

*Sands,* 887 A.2d at 270. We noted that our decision was limited to the constitutionality of Section 6308(b) as applied to vehicle stops based on a reasonable suspicion of driving under the influence. *Id.* We did not address whether the amended statute was in accord with federal and state constitutional protections identified in *Whitmyer* and *Gleason* where the suspected violation of the Motor Vehicle Code was not DUI. *Id.*

Despite our limited holding, subsequent decisions from this Court construed *Sands* as broad approval for a reasonable suspicion standard for traffic stops based on non-DUI violations of the Vehicle Code. *See Commonwealth v. Hendricks,* 927 A.2d 289, 290 (Pa.Super.2007) (stating the threshold justification for a traffic stop is reasonable suspicion); *Commonwealth v. Little,* 903 A.2d 1269, 1272 (Pa.Super.2006) (applying reasonable suspicion standard to a vehicle stop based solely on driving at an unsafe speed); *Commonwealth v. Ulman,* 902 A.2d 514, 518–19 (Pa.Super.2006) (same). All of these cases accepted the validity of traffic stops based on non-DUI violations of the Vehicle Code under the reasonable suspicion standard of Section 6308(b) as in accordance with *Sands,* albeit without a constitutional inquiry into the protections discussed in *Murray, Whitmyer,* and *Gleason.*

More recently, our Supreme Court reviewed the constitutionality of Section 6308(b)'s reasonable suspicion standard under both the Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution. *See Commonwealth v. Chase,* 599 Pa. 80, 960 A.2d 108 (2008). In *Chase,* the court approved *Sands'* focus on the investigative nature of a stop based on

reasonable suspicion. *Id.* at 115 ("[I]f the officer has no such expectations of learning additional relevant information concerning the suspected criminal activity, the stop cannot be constitutionally permitted on the basis of mere suspicion.... If *Terry* allows an investigative stop based on reasonable suspicion, there must be something to investigate."). The court then applied this analysis to Section 6308(b) and stated:

> The amendment of § 6308(b) accomplished the elimination of a unique and higher statutory threshold for stops for Vehicle Code offenses; the amendment indicated the legislature did not wish to create a higher standard than that required under the Constitution. That said, one must remember the reason why the Constitution tolerates the lesser standard articulated in *Terry*—the detention is allowed to maintain the *status quo* so the officer may conduct a brief and safe investigation to see if indeed there is criminal activity afoot. Extensive case law supports the conclusion a vehicle stop for DUI may be based on reasonable suspicion, as a post-stop investigation is normally feasible. **However, a vehicle stop based solely on offenses not "investigatable" cannot be justified by a mere reasonable suspicion, because the purposes of a *Terry* stop do not exist—maintaining the status quo while investigating is inapplicable where there is nothing further to investigate. An officer must have probable cause to make a constitutional vehicle stop for such offenses.**

*Chase,* 960 A.2d at 115–16 (emphasis added).

■ In light of our Supreme Court's interpretation of the current language of Section 6308(b), we are compelled to conclude that the standards concerning the quantum of cause necessary for an officer to stop a vehicle in this Commonwealth are

settled; notwithstanding any prior diversity on the issue among panels of this Court.[2] Traffic stops based on a reasonable suspicion: either of criminal activity or a violation of the Motor Vehicle Code under the authority of Section 6308(b) must serve a stated investigatory purpose. *Chase*, 960 A.2d at 116. In effect, the language of Section 6308(b)—"to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title"—is conceptually equivalent with the underlying purpose of a *Terry* stop. *Id.* (quoting 75 Pa.C.S. § 6308(b)).

■ Mere reasonable suspicion will not justify a vehicle stop when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation. In such an instance, "it is encumbent [sic] upon the officer to articulate specific facts possessed by him, at the time of the questioned stop, *which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the Code.*" *Gleason*, 785 A.2d

at 989 (citation omitted). *See also Chase*, 960 A.2d at 116 (reaffirming *Gleason's* probable cause standard for non-investigative detentions of suspected Vehicle Code violations).[3]

■ In the case *sub judice,* our analysis is limited to the legality of the traffic stop of Appellant's vehicle.[4] Trooper Miller testified that the basis for the traffic stop was because Appellant was "weaving within his lane and also crossed out of his lane of travel on numerous occasions." N.T. Suppression, 4/28/09, at 8. Trooper Miller observed Appellant's vehicle cross the double yellow center line of SR 174 on two separate occasions as well as drift over the white fog line on the opposite side of the traffic lane. *Id.* While no vehicles were required to take evasive action, Trooper Miller did observe traffic in the on-coming lane while following Appellant's vehicle. *Id.* at 12–13. These observations gave rise to a suspected violation of the Motor Vehicle Code provision requiring that vehicles drive within a single lane. *See* 75 Pa.C.S. § 3309(1).[5]

2. In two cases subsequent to *Chase,* this Court applied a reasonable suspicion standard to suspected violations of the Vehicle Code where a traffic stop could not have served an investigatory purpose. *Commonwealth v. Muhammed,* 992 A.2d 897 (Pa.Super.2010) (reviewing a stop based on a non-functioning center brake light); *Commonwealth v. Perry,* 982 A.2d 1009 (Pa.Super.2009) (reviewing a stop based on driving at an unsafe speed). The respective appellants in *Perry* and *Muhammed* both alleged that the officer lacked reasonable suspicion to effectuate the stop. In neither case did this Court examine whether reasonable suspicion was the proper standard in light of our Supreme Court's language in *Chase* stating that an officer must have probable cause of a Vehicle Code violation to stop a vehicle where the violation is not investigable. We note, however, that both presented factual scenarios where the distinction between the standards was immaterial to the disposition of the appeal.

3. We note our Supreme Court has not issued a subsequent ruling modifying the probable

cause standard articulated in *Gleason* and *Chase.*

4. Appellant does not contend that Trooper Miller lacked probable cause to arrest Appellant for driving under the influence if the initial traffic stop was legal. *See* N.T. Suppression, 4/28/09, at 3.

5. Section 3309(1) entitled "Roadways Laned for Traffic" provides:

Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others not inconsistent therewith shall apply:

(1) **Driving within single lane.**—A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane **until the driver has first ascertained that the movement can be made with safety.**

75 Pa.C.S. § 3309(1) (emphasis added).

Based on the record of the suppression hearing, we conclude Trooper Miller was able to articulate specific facts possessed by her, at the time of the questioned stop, which provided probable cause to believe that Appellant was in violation of Section 3309(1). We specifically note that the suppression court viewed a video recording from Trooper Miller's patrol car and observed "numerous touchings of the white fog line by the defendant's vehicle and clearly saw the vehicle cross over the center yellow line while negotiating a curve." N.T. Suppression, 4/28/09, at 15–16. Given the presence of oncoming traffic, Appellant's deviations from his lane of travel created a significant safety hazard on the roadway.

Based on the foregoing reasons, we find that the traffic stop of Appellant's vehicle was legal. Accordingly, we conclude that the trial court properly denied the motion to suppress.

Judgment of sentence affirmed.