J. S27011/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
DARRYL DEWS, : No. 918 EDA 2014
:
Appellant :

Appeal from the Judgment of Sentence, November 8, 2013,
in the Court of Common Pleas of Philadelphia County
Criminal Division at Nos. CP-51-CR-0001366-2012,
CP-51-CR-0001772-2012, CP-51-CR-0014064-2011

BEFORE:  FORD ELLIOTT, P.J.E., STABILE AND FITZGERALD,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED JULY 28, 2015**

Appellant, Darryl Dews, robbed three barbershops at gunpoint. Following a jury trial, he was convicted of 12 counts of robbery, three counts of conspiracy, and three counts of possessing an instrument of crime. On November 8, 2013, the Honorable Glenn Bronson sentenced appellant to an aggregate term of 50 to 100 years' imprisonment. We affirm.

The facts and procedural history, as summarized by the trial court, are as follows.

> On November 18, 2011, Stevie Bright was at the N the Kuts barbershop, located at 2514 South 71st Street in West Philadelphia, repairing the bathroom floor. N.T. 9/21/13 at 49. Also present in the shop were Bright's friend, Stephen Green, the barber Jaladeen Fleming, a Mr. McGlone, and an unidentified juvenile. N.T. 9/20/13 at 154-155; 9/21/13 at 50. Defendant and Michael Lewis entered

---

* Former Justice specially assigned to the Superior Court.

the barbershop wearing ski masks that left their faces exposed and with firearms extended. N.T. 9/21/13 at 50-52. Defendant stated, "[t]his is a robbery, everybody get on the ground." N.T. 9/21/13 at 29. Defendant and Lewis took cell phones, cash, and other items from the occupants of the barbershop before leaving. N.T. 9/21/13 at 51. Officers were not able to locate defendant or Lewis that night. N.T. 9/20/13 at 156.

On November 23, 2011, Kali Avans, Dwight Lee, and Tonya Lee-Phillips were getting their hair cut at the Stay Focused barbershop, located at 6031 Vine Street in West Philadelphia, by barbers Quimon Broady and Khalil Avans. N.T. 9/21/13 at 119. Also present was Ms. Lee-Phillips's three-year-old child. N.T. 9/21/13 at 119. At approximately 8:30 p.m., Corey Petty entered the barbershop in order to "scope it out" for defendant and Lewis, who were waiting outside the barbershop. N.T. 9/21/13 at 185. Petty asked for the price of a haircut for himself and his younger brother and then left the barbershop. N.T. 9/21/13 at 184. Defendant and Lewis then entered. N.T. 9/21/13 at 187. Upon entering the barbershop, defendant, wearing, a black skull hat, black jacket, and blue jeans, and Lewis announced a robbery and ordered everyone to the floor. N.T. 9/21/13 at 128. Defendant approached Dwight Lee and, holding a gun to Lee's head, said "[y]'all know what it is." N.T. 9/21/13 at 150. Turning to Ms. Lee-Phillips, defendant demanded "[b]itch, where is your pocketbook?" N.T. 9/21/13 at 153. Defendant subsequently took multiple items from the occupants of the barbershop, including cell phones and Ms. Lee-Phillips' purse, before leaving. N.T. 9/21/13 at 129-131. After defendant left, Avans dialed 911 and alerted the police of the robbery. Philadelphia Police Officer Anthony Jones responded to the scene but was unable to locate defendant. N.T. 9/20/13 at 145.

On November 25, 2011, William Lovett and Officer Anthony Jackson, then off-duty, were getting their hair cut at Brothers Barbershop, located at the

corner of 53rd and Sansom streets in West Philadelphia. N.T. 9/19/13 at 56, 172. Also present in the barbershop were Candace Rahemtulla, an employee of the barbershop, as well as barbers Jamal Edwards and Corey Ellis. N.T. 9/19/13 at 105, 173. While Officer Jackson was getting his hair cut, defendant and two other individuals, McDaniel Walker and Danny Matthews, entered the barbershop with firearms extended and defendant announced "[y]ou know what this is," ordering everyone to the floor. N.T. 9/19/13 at 60, 106, 174. Defendant was wearing a gray sweatshirt and gray sweatpants. N.T. 9/19/13 at 177. Defendant directed Walker and Matthews as they collected wallets, cell phones, and other items from the occupants of the barbershop. N.T. 9/21/13 at 191; 9/19/13 at 182. Officer Jackson, in an attempt to prevent the assailants from finding his firearm, moved his gun from his right hip to his stomach before lying down on the ground. N.T. 9/19/13 at 175-176. After Officer Jackson laid down on the ground, defendant stated "[y]o, check that mother fucker, he doing a lot of moving," whereupon the other two men patted down Officer Jackson and found his firearm. N.T. 9/19/13 at 178-179. After all occupants were searched and items seized, defendant Walker, and Matthews left the barbershop, having left victim Candace Rahemtulla in possession of her cell phone, from which she dialed 911. N.T. 9/19/13 at 108. After the assailants left the barbershop, Officer Jackson followed them until they entered into a white Chevy vehicle, parked on the north side of Sansom Street. N.T. 9/19/13 at 184. Officer Jackson then used the cell phone of a concerned citizen in the area and called 911, identifying himself as an off-duty police officer, and gave a description of the three individuals, as well as the vehicle in which they had left the area. N.T. 9/19/13 at 189.

Philadelphia Police Officer Eric Girill was the first Philadelphia Police Officer to arrive at the Brothers Barbershop, having been flagged down by Officer Jackson. N.T. 9/19/13 at 117.

William Lovett informed Officer Girill that his iPhone had been taken, and that he had installed the "Find My iPhone" app on the phone, which permits the remote activation of an iPhone's built in GPS locator in order to determine the phone's location. N.T. 9/19/13 at 70. Officer Girill inputted Lovett's identifying information into his own iPhone, which located Lovett's phone in the area of 57th and Walnut Streets. N.T. 9/19/13 at 121. Officer Girill relayed this information over police radio, refreshing the location information every 15 seconds. N.T. 9/19/13 at 122.

Officer Christina Mellett and her partner, Officer Jessie, responded to the relayed iPhone information and arrived at 57th and Walnut Street. N.T. 9/19/13 at 141. There they noticed Corey Petty, rapidly knocking on a door yelling "[l]et me in, let me in." N.T. 9/19/13 at 144. Officer Mellett stopped Petty and did a search for officer safety, locating Lovett's iPhone on Petty's person, which Petty later claimed he had bought from a "smoker." N.T. 9/19/13 at 145, 154. A white Chevy vehicle was parked directly across the street. N.T. 9/20/13 at 84. Lovett later identified his iPhone at the scene. N.T. 9/19/13 at 73.

Soon after Officer Mellett detained Petty, Officer Joseph Keys arrived at the scene and went to the property that Petty had been attempting to enter. Petty's mother, Nichole Petty, answered the door while defendant was standing behind her. N.T. 9/20/13 at 42. Defendant was wearing the same gray sweat suit he had worn during the robbery. N.T. 9/20/13 at 44. Defendant was detained for further investigation, as were the co-defendants who were found at the home. N.T. 9/20/13 at 44. Approximately fifteen minutes after the robbery occurred, Officer Jackson and Lovett were transported to 57th and Sansom Streets, where they positively identified all individuals who had entered the barbershop. N.T. 9/19/13 at 73-76, 193. Defendant was subsequently taken into custody.

After transporting Petty to the police station for processing, Officer Mellett found keys to a Chevy Impala on the back floor of her police vehicle where she had placed Petty. N.T. 9/19/13 at 150. These keys matched the white Chevy vehicle parked outside the 57th Street residence. N.T. 9/19/13 at 151. Petty subsequently gave a statement to police implicating himself in the Brothers Barbershop robbery, as well as the robbery at the Stay Focused barbershop. N.T. 9/21/13 at 204. N.T. 9/21/13 at 131. Using the statements given by Petty, police obtained a search warrant for Petty's girlfriend's home on North 63rd Street, where they recovered the cell phone belonging to Quimon Broady, a victim of the Stay Focused robbery.

Later that evening, Detective Craig Fife obtained a search warrant for the 57th Street residence, as well as the white Chevy vehicle parked outside. N.T. 9/20/13 at 84. Recovered from the residence were a black iPhone, later identified as belonging to Officer Jackson, and a snub nose .38 caliber Smith & Wesson revolver. N.T. 9/20/13 at 96-97. Recovered from the vehicle was a .40 caliber Glock semi-automatic handgun, later identified as belonging to Officer Jackson, and two AAA cards with the name Tonya Lee-Phillips. N.T. 9/20/13 at 88-89. Detective Fife ran Ms. Lee-Phillips name through the police database and determined that she was a victim of the robbery at the Stay Focused barbershop. N.T. 9/20/13 at 91. Detective Fife then did a search to determine if any other similar robberies had occurred in the area, identifying the robbery of the N the Kuts barbershop. N.T. 9/20/13 at 107.

On November 27, 2011, Kali Avans, from the Stay Focused robbery, was asked to view a photo array containing defendant's photo. Avans picked defendant out of the photo array, circling defendant's photo and stating he was 85% certain that defendant was the individual who had robbed him. N.T. 9/21/13 at 136. On January 11, 2012, Detective Bill Urban conducted a court-ordered

lineup for Avans and Ms. Lee-Phillips. N.T. 9/21/13 at 107. Avans did not hesitate in picking defendant out of the lineup. N.T. 9/21/13 at 110. Ms. Lee-Phillips did not correctly identify defendant at the lineup, instead identifying another participant in the lineup. N.T. 9/21/13 at 110.

On November 29, 2011, Detective Fife contacted Stevie Bright, a victim of the N the Kuts barbershop robbery, in order to show him a photo array containing defendant's photograph. N.T. 9/20/13 at 110. Bright identified defendant as a person involved in the robbery. N.T. 9/20/13 at 110, N.T. 9/21/13 at 64.

Trial court opinion, 6/10 14 at 2-6 (footnote omitted).

Prior to the beginning of the jury trial, appellant raised a motion to suppress. The purpose of the motion to suppress was that the identification made of appellant was highly suggestive and improper such that it deprived him of a fair trial. Hearings were held on September 17 and 18, 2013. The Commonwealth presented the testimony of Detectives Fife and Maurizio, Officers Butler and Jackson, and a victim, Lovett. Their testimony regarding the identification of appellant as the perpetrator of the robberies was consistent with the evidence presented at trial. The court denied the motion.

Appellant presents two issues for our review.

> A. DID THE TRIAL COURT ERR WHEN IT DENIED THE MOTION TO SUPPRESS THE IN-COURT IDENTIFICATION OF THE APPELLANT WHERE THE ON-SCENE IDENTIFICATION OF THE APPELLANT WAS HIGHLY SUGGESTIVE?

> B. WAS THE EVIDENCE PRESENTED INSUFFICIENT AND/OR AGAINST THE WEIGHT OF THE EVIDENCE TO SUPPORT THE VERDICT WHERE IT FAILED TO SHOW THAT THE APPELLANT COMMITTED THE ROBBERIES FOR WHICH HE WAS ACCUSED?

Appellant's brief at 6.

Appellant first argues that the on-scene identifications of Officer Jackson and Mr. Levitt should have been suppressed as the circumstances were highly suggestive. No relief is due.

Our standard and scope of review in evaluating a suppression issue are settled.

> We are limited to determining whether the lower court's factual findings are supported by the record and whether the legal conclusions drawn therefrom are correct. We may consider the evidence of the witnesses offered by the Commonwealth, as verdict winner, and only so much of the evidence presented by [the] defense that is not contradicted when examined in the context of the record as a whole. We are bound by facts supported by the record and may reverse only if the legal conclusions reached by the court were erroneous.

*Commonwealth v. Feczko*, 10 A.3d 1285, 1287 (Pa.Super. 2010) (*en banc*).

> In reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable. The purpose of a "one on one" identification is to enhance reliability by reducing the time elapsed after the commission of the crime. Suggestiveness in the identification process is but one factor to be considered in determining the admissibility of such evidence and will not warrant exclusion absent other

> factors. As this Court has explained, the following factors are to be considered in determining the propriety of admitting identification evidence: the opportunity of the witness to view the perpetrator at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the perpetrator, the level of certainty demonstrated at the confrontation, and the time between the crime and confrontation. The corrupting effect of the suggestive identification, if any, must be weighed against these factors. Absent some special element of unfairness, a prompt "one on one" identification is not so suggestive as to give rise to an irreparable likelihood of misidentification.

*Id.*, quoting **Commonwealth v. Moye**, 836 A.2d 973, 976 (Pa.Super. 2003), **appeal denied**, 851 A.2d 142 (Pa. 2004).

Appellant's argument focuses on the fact that, when identified, he was in police custody and in handcuffs. (Appellant's brief at 14-15.) As the Commonwealth states, appellant's argument has been repeatedly rejected. While both Officer Jackson and Mr. Lovett identified appellant while in handcuffs, this fact alone does not constitute grounds for reversing the suppression court. **Commonwealth v. Armstrong**, 74 A.3d 228, 238 (Pa.Super. 2013), **appeal granted on other grounds**, 83 A.3d 411 (Pa. 2014) (finding that "on-scene, one-on-one identifications, even where an appellant is handcuffed and officers ask a victim to identify him as the perpetrator, are 'not so suggestive as to give rise to an irreparable likelihood of misidentification'"); **Commonwealth v. Donley**, 455 A.2d 159, 161-162 (Pa.Super. 1983) (holding that witness identification two hours after robbery

while defendant was handcuffed and seated in the back of a police car did not violate due process).

A review of the testimony presented at the suppression hearing reveals that Jackson, an off-duty police officer, testified that the barbershop was well-lit. Jackson positively identified appellant 15 minutes after the crime occurred. The officer stated he was 100% certain appellant was the perpetrator because "it happened just approximately 15 minutes before," and "appellant was wearing the same identical clothes." (Notes of testimony, 9/17/13 at 31.) Officer Jackson testified that nothing covered appellant's face during the robbery, and he observed appellant for approximately three to five minutes.

Separately, Mr. Lovett positively identified appellant after the police brought him to the scene of appellant's arrest soon after the robbery. Lovett testified that during the robbery, appellant stood no more than ten feet away with nothing covering his face. Appellant was wearing a gray hooded sweatshirt and gray pants. Lovett stated the lighting in the barbershop was "extremely bright." (*Id.* at 15.) No relief is due.

Appellant's second issue combines two legally distinct arguments -- the sufficiency and the weight of the evidence. (Appellant's brief at 16.) Appellant's claim is waived pursuant to *Commonwealth v. Lemon*, 804 A.2d 34 (Pa.Super. 2002). In *Lemon*, we held that although the appellant raised some specific challenges in his appellate brief, the vagueness of his

Rule 1925(b) statement,[1] which prevented the trial court from analyzing his claims of trial court error, precluded effective appellate review. We held that under **Commonwealth v. Lord**, 719 A.2d 306 (Pa. 1998), and its progeny, the appellant waived his claims on appeal. **Id.** at 37-38; **see also Commonwealth v. Seibert**, 799 a.2d 64, 62 (Pa.Super. 2002) (appellant's weight of the evidence issue waived for having filed a vague Rule 1925(b) statement, to wit, "[t]he verdict of the jury was against the weight of the credible evidence as to all charges.")

In this case, appellant's court-ordered Rule 1925(b) statement provided:

> the verdict is against the weight of the evidence and/or the evidence is insufficient to support the verdict because: a. the evidence presented at trial by the Commonwealth failed to support a conviction for the crime of robbery and conspiracy. Specifically, that the evidence introduced at trial was not sufficient enough to cause a reasonable juror to convict the appellant of said crimes.

Docket #11. Appellant was convicted of twelve counts of robbery and three counts of conspiracy in relation to three separate robberies with numerous victims. Appellant left the trial court to speculate as to the specific elements not met with regard to each robbery and conspiracy or how the verdict was against the weight of the evidence. In point of fact, the argument presented

---

[1] The appellant in **Lemon** stated in his Rule 1925(b) statement that "[t]he verdict of the jury was against the evidence," "[t]he verdict of the jury was against the weight of the evidence," and "[t]he verdict was against the law." **Lemon**, 804 A.2d at 37.

in appellant's brief challenges the credibility of the testimony and identifications of a number of eyewitnesses, neither of which the trial court addressed in its Rule 1925(a) opinion, which summarily disposed of appellant's second issue.  Thus, we find this issue has not been preserved for appellate review.[2]

Judgment of sentence affirmed.


Stabile, J. joins the Memorandum.

Fitzgerald, J. concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/28/2015

---

[2] We are cognizant of the supreme court's decision in **Commonwealth v. Laboy**, 936 A.2d 1058 (Pa. 2007), cited by the trial court.  In **Laboy**, the court determined we erred in deciding appellant had failed to adequately develop his claim of insufficient evidence to support his conviction in his Rule 1925(b) statement, noting that the case was a "relatively straightforward drug case" though "in more complex criminal matters the common pleas court may require a more detailed statement to address the basis of the sufficiency challenge."  **Id.** at 1060.  We find the instant matter is distinguishable as it is more complex and requires at least some specificity concerning whether appellant is taking issue with one or all of the robberies and conspiracies.