J-A10005-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| JAMAL KNOX | |
| Appellant | No. 1136 WDA 2014 |

Appeal from the Judgment of Sentence February 21, 2014
In the Court of Common Pleas of Allegheny  County
Criminal Division at No(s): CP-02-CR-0003870-2013
CP-02-CR-0004264-2013
CP-02-CR-0006621-2012

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and PANELLA, J.

MEMORANDUM BY PANELLA, J.                    **FILED AUGUST 02, 2016**

Appellant, Jamal Knox, appeals from the judgment of sentence entered after the trial court, sitting without a jury, convicted him of multiple offenses arising from three separate criminal incidents. On appeal, Knox challenges the legality of a traffic stop of his vehicle, as well as the sufficiency of the evidence supporting his convictions for intimidation of witnesses and terroristic threats. After careful review, we conclude that none of Knox's arguments on appeal merit relief. We therefore affirm.

This is an appeal from a bench trial over charges arising from three separate criminal incidents. However, only two of these incidents are relevant to the issues on appeal, and we therefore need not detail the factual or procedural history relevant to only the third incident.

In April 2012, Pittsburgh police officers Michael Kosko and David Derbish stopped Knox's vehicle after they had observed that he had not properly utilized his turn signal while parallel parking. After Knox indicated that he did not have a valid driver's license, the officers asked him to step outside his vehicle. Rather than comply, Knox sped away in his vehicle before striking a parked car and a fence, leaving Knox's vehicle inoperable. Knox proceeded to run from his vehicle, but was quickly apprehended. A seach of Knox's vehicle revealed heroin, a large sum of cash, and a loaded firearm. Co-defendant Rashee Beasley was a front seat passenger in Knox's vehicle, and was also arrested.

Both Knox and Beasley were charged with multiple offenses, most significantly narcotics and firearms offenses. While these charges were pending, Beasley and Knox recorded a rap video entitled "Fuck the Police." The song had three verses, with Knox rapping the first verse by himself, Beasley rapping the second by himself, and Knox rapping the third verse.[1] The first verse:

> This first verse is for Officer Zeltner and all you fed force bitches/and Mr. Kosko, you can suck my dick you keep on knocking my riches/ you want beef, well cracker I'm wit it/ that whole department can get it/ all these soldiers in my committee gone fuck over you bitches/ fuck the police, bitch I said it loud/

_____

[1] Some evidence of record indicates that both Beasley and Knox rapped the third verse together. However, in his brief, Knox claims that he performed the third verse solo. Whatever the case may be, it does not affect the ultimate resolution of this appeal.

the fuckin' city can't stop me, y'all gone need Jesus tryin' to break me down/ and he ain't fuckin' with you dirty devils/ we making prank calls, as soon as you bitches come we bustin' heavy metal/ they chase me through these streets/ and I'm a jam this rusty knife all in his guts and trust its beef/ you taking money away from Beaz and all my shit away from me/ well your shift over at three/ and I'm gone fuckup where you sleep/ Hello Breezos got you watching my moves and talkin' 'bout me to your partner/ I'm watchin' you too, bitch I see better when it's darker/ Highland Park gone be Jurassic Park keep fuckin' wit me/ ayo Beaz call Dre and Sweet and get them 2 23s.

**See** Appellant's Brief, at 8.[2] Beasley then shared their creation with the public. He uploaded the video to YouTube, and also posted a link to the video on his Facebook profile.

In November 2012, a Pittsburgh Police Department officer came across the video on YouTube. The use of Detective Zeltner's and Officer Kosko's names, in conjunction with the violent language, caught her attention and the video was referred for further review. Knox and Beasley were subsequently charged with intimidation of witnesses and terroristic threats.

Knox filed a motion to suppress the evidence seized during the April 2012 traffic stop, which the trial court denied. Knox waived his right to a jury trial, and the trial court found him guilty of possession with intent to distribute controlled substances, fleeing and eluding, false statements, possession of controlled substances, intimidation of witnesses, terroristic

_____

[2] The transcription of the lyrics in Appellant's Brief is substantially similar to the transcription utilized by the police in their applications for search warrants. Knox does not raise any challenge regarding the transcription of the lyrics of the song.

threats, and criminal conspiracy. The trial court imposed an aggregate sentence of two to six years' imprisonment to be followed by two years of probation. Knox's post-sentence motions were denied, and this timely appeal followed.

On appeal, Knox first argues that the trial court erred in denying his motion to suppress. Specifically, Knox contends that Officer Kosko did not have sufficient reasonable suspicion to perform the stop, and therefore all the fruits of the subsequent arrest and search should have been suppressed.

We review a challenge to a trial court's refusal to suppress evidence pursuant to the following well established standard of review.

> [W]e are limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We may consider the evidence of the witnesses offered by the prosecution, as verdict winner, and only so much of the defense evidence that remains uncontradicted when read in the context of the record as a whole.

***Commonwealth v. McAliley***, 919 A.2d 272, 275-276 (Pa. Super. 2007) (citation omitted). "Moreover, if the evidence supports the factual findings of the suppression court, this Court will reverse only if there is an error in the legal conclusions drawn from those findings." ***Commonwealth v. Powell***, 994 A.2d 1096, 1101 (Pa. Super. 2010) (citation omitted).

The quantum of proof necessary to make a vehicle stop on suspicion of a violation of the motor vehicle code is governed by 75 Pa.C.S.A. § 6308(b), which states:

**(b) Authority of police officer.**—Whenever a police officer is engaged in a systematic program of checking vehicles or drivers *or has reasonable suspicion that a violation of this title is occurring or has occurred*, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

(emphasis supplied).

Traffic stops based upon suspicion of a violation of the motor vehicle code under § 6308(b) "must serve a stated investigatory purpose." ***Commonwealth v. Feczko***, 10 A.3d 1285, 1291 (Pa. Super. 2010) (en banc).

Mere reasonable suspicion will not justify a vehicle stop when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation. In such an instance, 'it is encumbent [sic] upon the officer to articulate specific facts possessed by him, at the time of the questioned stop, which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the Code.'

***Id***. (emphasis and citation omitted).

At the suppression hearing, the Commonwealth presented the testimony of Officer David Derbish. Officer Derbish testified that on the night in question, he was on patrol with his partner, Officer Kosko. ***See*** N.T., Suppression Hearing, 6/5/13, at 16-17. He observed Knox pull his vehicle into a parking space without utilizing his turn signal. ***See id***., at 17. The officers pulled beside Knox's parked vehicle and questioned Knox briefly. When Knox indicated that he did not have a valid driver's license, Officer

Kosko instructed him to stop. *See id*., at 18. Officer Kosko began to open his door to investigate further when Knox pulled his vehicle out of the parking space and fled. *See id*.

Knox argues that these observations were insufficient to justify the traffic stop. However, the Pennsylvania Motor Vehicle Code provides that a driver must utilize a turn signal when changing lanes. *See* 75 Pa.C.S.A. § 3334(a). Knox does not dispute that Officer Derbish's testimony was sufficient to establish that he didn't use a turn signal while pulling over into a parking space, but merely argues that this constituted a "minor and momentary" infraction insufficient to provide probable cause, citing *Commonwealth v. Garcia*, 859 A.2d 820 (Pa. Super. 2001).

*Garcia* is easily distinguishable. In *Garcia*, the relevant sections of the vehicle code pertained to driving within a single lane and driving on the right side of the roadway. *See id*., at 822 n.1. These violations necessarily involve a certain amount of discretionary judgment regarding duration and amount of deviance from the lane of travel, especially when a driver may be reacting to a perceived hazard in the roadway. The *Garcia* decision notes that the deviations at issue were minor and brief, and in reaction to oncoming traffic. *See id*., at 823. Thus, the *Garcia* panel held that the observations did not provide probable cause to believe the relevant sections of the vehicle code had been violated.

This case stands in stark contrast to **Garcia**. Here, there is no discretion involved in section 3334(a); either the turn signal is used when changing lanes, or it is not. Knox does not dispute that he changed lanes. Nor does he argue that he merely was late in using his turn signal. **Garcia** is plainly inapplicable. The suppression court did not abuse its discretion in refusing to suppress the evidence gained from the stop.

Next, Knox argues that the evidence at trial was insufficient to support his convictions for intimidation of a witness and terroristic threats. In particular, Knox contends that the evidence at trial was insufficient to establish that he knowingly transmitted the threats in the YouTube video in a manner whereby the officers named in the video would receive the threats.

Knox relies upon the definitions of the two offenses to argue that the Commonwealth was required to prove that he knowingly communicated the threats to the victimized officers. For intimidation of a witness, the Commonwealth charged Knox with intimidating the officers while they were witnesses in a case against him, "with the intent to or with the knowledge that [he] would obstruct, impede, impair, prevent, or interfere with the administration of criminal justice." Criminal Information, filed 4/11/13, at 1. Under terroristic threats, the Commonwealth charged Knox with "communicat[ing] a threat, either directly or indirectly, to commit a crime of

violence with the intent to terrorize" the officers. *Id*.[3] Pursuant to these charges, we agree with Knox that the Commonwealth was required to establish that he acted at least knowingly with respect to each element of the crimes.

We therefore must evaluate whether the evidence presented by the Commonwealth was sufficient to prove that Knox knowingly communicated the threats contained in the YouTube video. In reviewing a challenge to the sufficiency of the evidence, we evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Commonwealth v. Bibbs*, 970 A.2d 440, 445 (Pa. Super. 2009) (citation omitted).

> Evidence will be deemed sufficient to support the verdict when it established each element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty, and may sustain its burden by means of wholly circumstantial evidence. Significantly, [we] may not substitute [our] judgment for that of the factfinder; if the record contains support for the convictions they may not be disturbed.

*Id*. (citation and quotation marks omitted). "Any doubt about the defendant's guilt is to be resolved by the factfinder unless the evidence is so

_____

[3] The Commonwealth argues that under *Commonwealth v. Kelley*, 664 A.2d 123 (Pa. Super. 1995), it was only required to prove that Knox acted recklessly to sustain the conviction for terroristic threats. However, the Commonwealth did not charge Knox with a violation of § 2706(a)(3), which provides for a conviction if the defendant acted with a "reckless disregard of the risk of causing" terror or inconvenience.

weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." **Commonwealth v. Scott**, 967 A.2d 995, 998 (Pa. Super. 2009).

Knox essentially argues that while he knowingly rapped the threatening lyrics in the "Fuck the Police" video, the Commonwealth did not prove that he ever had knowledge that the videos would be made available to the public. He therefore contends that the Commonwealth never proved that he knowingly communicated the threat to the officers, either directly or indirectly.

It is clear from our review that the Commonwealth did not prove that Knox ever directly communicated the threats to the officers. However, as the Commonwealth notes, this is not fatal to the conviction. Communications with third parties in a manner consistent with an intention of transmitting the threat to the victim is sufficient to sustain a conviction. **See Kelley**, 664 A.2d at 127-128.

To establish knowing or intentional indirect communication of the threatening lyrics, the Commonwealth presented evidence that Knox and Beasley had performed several rap videos together. **See** N.T., Trial, 11/13/13, at 180-181, 186-187; N.T., Trial, 11/18/13, at 258.[4] These videos

_____

[4] The Notes of Testimony cover several days of testimony, but are consecutively numbered such that testimony from 11/12/13 is recorded at
*(Footnote Continued Next Page)*

- 9 -

were not merely performed live, but recorded for posterity. **See id**. Beasley posted these videos online to YouTube and Facebook accounts that were accessible by the public. **See id**., at 180-190, 317-318. "Fuck the Police" was posted several days after the first of these rap videos had been posted. **See id**., at 257-258.

Viewing this evidence in a light most favorable to the Commonwealth, as we must, we conclude that this evidence is sufficient to establish that Knox knew his lyrics would be made publicly available. "Fuck the Police" was not a one-off live performance. It was the third in a string of rap videos produced by the duo, all of which were posted to publicly available websites. The trial court, sitting as a fact-finder, was permitted to infer from this evidence that Knox knew that these lyrics would be seen by the police or by third parties who would then notify the police. We therefore conclude that Knox's second issue on appeal merits no relief.

In his final issue, Knox argues that the trial court erred in admitting the "Fuck the Police" video into evidence, as the conduct was protected conduct under the First Amendment. This issue is waived, as Knox did not raise this, or any, objection at trial when the video was entered into evidence. **See** N.T., Trial, 11/13/13, at 203; Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time

_(Footnote Continued)_ ─────────────

pages 1-100, testimony from 11/13/13 at pages 101-233, and testimony from 11/18/13 at pages 242-398.

on appeal."). We decline to accept Knox's invitation to address this issue despite this waiver. Knox is not precluded, based upon the arguments before us, from raising this issue in a collateral proceeding.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/2/2016