**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-3017
_____

UNITED STATES OF AMERICA

v.

JUAN GUZMAN,
Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(District Court No.:  2-19-cr-00211-001)
District Judge:  Hon. Cathy Bissoon

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
July 12, 2022

(Filed   July 19, 2022)

Before:  GREENAWAY, JR., MATEY, and RENDELL, *Circuit Judges*.

_____

O P I N I O N[*]
_____

RENDELL, *Circuit Judge*.

Having been indicted on two counts related to his possession of more than three

pounds of fentanyl with intent to distribute, Defendant Juan Guzman moved to suppress

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

the drugs, which were seized upon a consensual search of his car by a State Trooper along the Pennsylvania Turnpike. Although Guzman urges that the Trooper had neither probable cause nor reasonable suspicion to stop his car, we discern no error in the District Court's conclusion that the Trooper witnessed Guzman commit at least one traffic violation, if not more, which justified the stop. Thus, we will affirm the District Court's order denying Guzman's motion to suppress.

I.

On July 8, 2019, Trooper Zachary Del Sordo observed a Dodge Durango traveling along the Pennsylvania Turnpike, which was later determined to be operated by Defendant Guzman, slow down and coast past his unmarked police car. Based on his police training, Trooper Del Sordo considered this, and other aspects of the driver's conduct, to be "overly cautious" and somewhat "suspicious." JA32. So, he began following the car.

As Del Sordo approached, he observed the car "ma[k]e an abrupt lane change into the right lane in front of a tractor-trailer," which Del Sordo considered "unsafe" given the "distance between [the Durango] and the tractor-trailer was very close." JA32-33. Having witnessed the unsafe and abrupt lane change, Del Sordo continued to follow the Durango and moved in closer.

He approached and, while still following the car, checked on the car's registration. While checking the registration, he observed the Durango "driving on the fog line." JA33. "[T]he passenger's side tires were directly on top of the fog line of the highway" that separates the right travel lane from the emergency lane and highway berm. JA33-34.

2

Finally, after watching the Durango ride atop the fog line, Del Sordo observed the vehicle fail to "move over when [it] approached a Pennsylvania Turnpike vehicle which had its emergency lights on." JA34. "The Pennsylvania turnpike vehicle was on the berm of the road very close to where the fog line [is] on the highway." JA34. And "there was an individual that was outside of the vehicle," but Del Sordo could not "tell what that individual was doing at the time." JA35.

Having witnessed the driver of the Durango make an abrupt and unsafe lane change in front of a tractor-trailer, ride atop the fog line, and fail to move over for a Turnpike vehicle with flashing emergency lights, and indeed come very close to the stopped Turnpike vehicle, Del Sordo "assess[ed] the driv[er's]" conduct "as dangerous" and "attempted to initiate a traffic stop [of] the . . . vehicle." JA35. While the driver did not "stop right away," "[h]e eventually pulled over." JA35.

Del Sordo approached the car and explained to Guzman that under Pennsylvania's so-called "steer clear law," "he needed to move over" for the Turnpike vehicle and worker "and it was a dangerous thing" that Guzman had not. JA36. Trooper Del Sordo then requested and received consent from Guzman and Taveras—a passenger and the registered owner of the vehicle—to search the car.

Upon searching the car, Del Sordo found and seized three pounds of fentanyl hidden in a compartment behind the dashboard radio. Del Sordo arrested Guzman and Taveras. Guzman was later indicted for violating 21 U.S.C. § 846 (conspiracy to possess or distribute 400 grams or more of fentanyl) and 21 U.S.C. § 841 (possession with intent to distribute 400 grams or more of fentanyl).

3

Guzman moved to suppress the drugs urging that Trooper Del Sordo did not have cause to stop him and, thus, all evidence flowing from the initial stop, namely the three pounds of fentanyl, could not be admitted at trial. The District Court scheduled argument and an evidentiary hearing on the motion at which Trooper Del Sordo testified about the stop.

Defense counsel argued that Guzman's purported failure to move over before passing the Turnpike vehicle with its flashing emergency lights could not, as a matter of law, have supplied Trooper Del Sordo with justification to conduct a traffic stop. According to counsel, this was because for such a failure to constitute a violation of Pennsylvania's "steer clear law,"[1] the Turnpike vehicle must have been, but was not, actively rendering emergency assistance to another person within a defined "emergency response area." JA22.

Although he did not expressly argue that Trooper Del Sordo's two other reasons for stopping Guzman—abruptly and unsafely changing lanes in front of the tractor-trailer and riding atop the fog line near the Turnpike vehicle—could not have provided legitimate alternate grounds for the stop, defense counsel cross examined Del Sordo on why he had not mentioned either of these other violations to Guzman at the time of the stop or otherwise referenced them in his written report of the incident. JA45-46.

---

[1] The "steer clear law" provides that "[w]hen approaching or passing an emergency response area, a person, unless otherwise directed by an emergency service responder, shall . . . pass in a lane not adjacent to that of the emergency response area[.]" 75 Pa. Cons. Stat. Ann. § 3327 (West).

4

In response, Del Sordo explained that he "believed that [the steer clear law violation] was the most serious violation." JA45-46. He also explained that he wrote his report regarding "the seizure of the fentanyl," rather than for the "traffic violations." JA46. Indeed, Guzman was arrested for his possession of the fentanyl rather than his traffic violations.

The District Court denied the motion for two reasons.

First, as to Guzman's primary argument—that his failure to move over for the Turnpike vehicle could not, as a matter of law, have justified the traffic stop because the Turnpike employee was not rendering aid in an "emergency response area"—the District Court, citing our decision in Delfin-Colina,[2] concluded that given the "totality of the circumstances," Trooper Del Sordo was justified in stopping Guzman based on his belief that a steer clear law violation had occurred. JA18.

Second, even if Trooper Del Sordo's conclusion that Guzman had violated the steer clear law was erroneous as a matter of law, he "credibly testified that, before the presumed Section 3327 violation, he witnessed [Guzman] commit[] two other traffic violations." JA18. Guzman "ma[de] an abrupt lane change and . . . dr[ove] on the road's fog line." JA18 (internal quotation marks and citations omitted).

Guzman appealed.

---

[2] United States v. Delfin-Colina, 464 F.3d 392, 397 (3d Cir. 2006).

## II.[3]

Under Pennsylvania law, a police officer must have "articulable and reasonable grounds" or "probable cause" to stop a motorist for an offense that is not "investigatable," whereas a police officer need only have reasonable suspicion to stop a motorist for a "stated investigatory purpose." Commonwealth v. Chase, 960 A.2d 108, 116, 118 (Pa. 2008). "Non-investigative" stops include, for example, stops for "careless driving" under 75 Pa. Cons. Stat. Ann. § 3714,[4] and stops for failing to "maintain [one's] vehicle within a single lane" under 75 Pa. Cons. Stat. Ann. § 3309(1).[5]

Although Guzman urges that "[t]he District Court erred in failing to address . . . whether the state-approved interpretation of [] Section 3327 is an objectively reasonable interpretation," we need not reach this issue. Appellant's Br. 9. The District Court concluded, and we agree, that even if Guzman's stop was not justified upon a violation of the "steer clear law," his stop was otherwise justified by Trooper Del Sordo's credible and undisputed testimony that Guzman had "commit[ed] two other traffic violations." JA18. While Guzman challenges Trooper Del Sordo's observation of these violations on

---

[3] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3731. We review the District Court's findings of fact for clear error and review its legal conclusions de novo. United States v. Caesar, 2 F.4th 160, 167 (3d Cir. 2021).

[4] See, e.g., Commonwealth v. Wilson, 111 A.3d 747, 755 (Pa. Super. Ct. 2015) (concluding that where a trooper testified that he witnessed the defendant "swerve[] multiple times across the yellow lines and fog line" the trooper had probable cause to stop the defendant for a violation of, among other things, section 3714).

[5] See, e.g., Commonwealth v. Feczko, 10 A.3d 1285, 1291-92 (Pa. Super. Ct. 2010) (concluding that where a trooper testified that he witnessed the defendant "cross the double yellow center line . . . on two separate occasions as well as drift over the fog line" the trooper had probable cause to stop the defendant for a violation of section 3309(1)).

grounds that they were "after-the-fact justification[s]," such a challenge goes only to Del Sordo's credibility. Appellant's Br. 22-24. As the District Court found Trooper Del Sordo's testimony at the evidentiary hearing to be credible, his testimony consistent with the police dashcam footage of the incident, and otherwise undisputed, we see no reason to disturb the District Court's findings. It committed no error.

We also reject Guzman's argument that the District Court's reliance on the "other traffic violations" undermines its credibility assessment of Trooper Del Sordo. JA18. Guzman urges that the District Court's "decision to credit the Trooper's testimony regarding his ability to stop Guzman for an unsafe lane change [and driving atop the fog line in close proximity to the Turnpike vehicle] is clearly erroneous and . . . made without regard to the actual terms of the state statute and controlling state appellate authority." Reply Br. 20. But based on Trooper Del Sordo's uncontroverted testimony, the District Court concluded that Trooper Del Sordo "witnessed Defendant commit[] two other traffic violations." JA18. Trooper Del Sordo testified consistent with the dashcam footage that he saw Guzman make an "abrupt" and "unsafe" lane change in front of a tracker-trailer and ride atop the fog line near the Turnpike vehicle, JA33, which was "dangerous," especially since there was a Turnpike worker on the highway berm. JA36. These facts sufficed to justify the stop. See, e.g., Wilson, 111 A.3d at 755; Feczko, 10 A.3d at 1291-92; Commonwealth v. Cook, 865 A.2d 869, 874-75 (Pa. Super. Ct. 2004) (concluding that where a trooper testified that he witnessed the defendant "drive over the right fog line to the extent of half the vehicle width, three times, and then rapidly jerk back into his

7

line of travel" the trooper had probable cause to stop the defendant for a violation of section 3309(1)).

III.

For these reasons, we will affirm the District Court's order denying Defendant Guzman's motion to suppress.