J-A35024-14

2015 PA Super 36

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| STEVE EDWARD WILSON, | |
| Appellant | No. 1976 WDA 2013 |

Appeal from the Judgment of Sentence entered November 14, 2013,
in the Court of Common Pleas of Allegheny County,
Criminal Division at No(s): CP-02-CR-0009856-2013

BEFORE:  BENDER, P.J.E., BOWES, and ALLEN, JJ.

OPINION BY ALLEN, J.:                           **FILED FEBRUARY 18, 2015**

Steve Edward Wilson ("Appellant") appeals from the judgment of sentence imposed after the trial court convicted him of four counts of driving under the influence ("DUI"), one count of careless driving, and one count of obscured plates.[1]

The trial court detailed the pertinent facts as follows:

> At approximately 1:00 a.m. on May 7, 2013, Springdale Township police officer Joseph Martino was on patrol on Freeport Road in a marked police vehicle with external lights.  Officer Martino approached a black Expedition, driven by [Appellant], which was completely stopped in the middle of the roadway.  As Officer Martino drove toward the Expedition, it began to travel in the direction of Riddle Run Road.  As it traveled, Officer Martino observed the vehicle cross the yellow line approximately four times.  At this time, Officer Martino activated his lights and effectuated a traffic stop on the Expedition.

---

[1] 75 Pa.C.S.A. §§ 3802(a)(1) and (b), 3714(a), and 1132(b)(3).

When Officer Martino activated his lights, his vehicle's dash camera turned on and recorded the traffic stop for approximately 37 minutes, including the periods immediately before and after the lights are activated. The camera records for approximately two minutes before the lights are turned on and 45 seconds after the lights are shut off. At 27 seconds, [Appellant's] brake lights are not on and the vehicle was able to move. At 44 seconds, the vehicle crossed the double yellow line. At 50 seconds, the vehicle crossed the double yellow line. At 51-52 seconds, the vehicle crossed the white "fog" line. At 1:08, the vehicle crossed the double-yellow line. At this point, the lights were activated.

Officer Martino noticed that there was a partially tinted license plate cover affecting his view of the registration. Though his police report did not reference the license plate, the criminal complaint did. Officer Martino then went to the driver's window where he identified the driver as [Appellant] and detected a strong odor of alcohol coming from the vehicle. He obtained [Appellant's] information and observed four children, all estimated to be under the age of twelve in the back of the vehicle, none of whom were wearing a seat belt. Officer Martino also observed a glass filled with wine in the middle console of the front seat. The substance was determined to be wine based on its smell and the passenger's statement that it was "just a little bit of wine." The passenger did not say that it was her wine.

Based on the odor of alcohol, [Appellant's] bloodshot and glassy eyes, and his slurred speech, Officer Martino asked [Appellant] to exit the vehicle so that he could perform field sobriety tests. Officer Martino intended to conduct the [horizontal gaze nystagmus], the walk-and-turn, and one-legged stand tests. Appellant failed to complete the one-legged stand and during the performance of the walk-and-turn test, [Appellant] said, "Just take me to jail." At this time, Officer Martino placed [Appellant] under arrest and placed him in the back of the patrol vehicle based on the results of the HGN, one-legged stand, and walk-and-turn tests, his observations of [Appellant's] red glassy eyes, slurred speech, and odor of alcohol. [Appellant] was taken into custody around the 18-minute mark of the recording.

Trial Court Opinion, 5/16/14, at 4-6 (citations to notes of testimony omitted).

Appellant was charged with four counts of DUI, one count of violating the restriction on open alcoholic beverages in a motor vehicle, one count of driving at less than normal speed, one count of careless driving, three counts of improper child restraints, and one count of obscured plates.

On November 6, 2013, Appellant filed a suppression motion. Following a hearing on November 14, 2013, the trial court denied Appellant's suppression motion. That same day, following a non-jury trial, the trial court found Appellant guilty of four counts of DUI, careless driving, and obscured license plates, and not guilty of the remaining charges.[2]

Following a sentencing hearing, the trial court, on November 14, 2013, sentenced Appellant at Count 1 to a sentence of 12 months of probation, and a concurrent sentence requiring him to attend 4 days of a DUI

_____

[2] Appellant was convicted of the following offenses:

Count 1:  DUI (high rate of alcohol, with a minor), 75 Pa.C.S.A. § 3802(b)
Count 2:  DUI (general impairment), 75 Pa.C.S.A. § 3802(a)(1)
Count 3:  DUI (general impairment),75 PA.C.S.A. 3802(B)
Count 4:  DUI (general impairment) 75 Pa.C.S.A. § 3802(A)(1)
Count 7:  Careless Driving, 75 PA.C.S.A. § 3714(A)
Count 11: Obscured Plates, 75 Pa.C.S.A. § 1332(B)(3)

alternative to jail program, to commence 120 days from the date of sentencing, with no further penalty on the remaining charges.

Appellant filed a timely notice of appeal. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents two issues for our review:

I. IS A SENTENCE ILLEGAL WHEN A PERSON RECEIVES A SENTENCE EXCEEDING THE STATUTORY MAXIMUM OF SIX MONTHS ON A FIRST-TIME DUI CONVICTION UNDER 75 PA.C.S.A. § 3803(B), EVEN THOUGH THE OFFENSE IS GRADED AS A FIRST DEGREE MISDEMEANOR?

II. DID LAW ENFORCEMENT HAVE REASONABLE SUSPICION TO BELIEVE THAT [APPELLANT] COMMITTED A VIOLATION OF THE MOTOR VEHICLE CODE IN ORDER TO LEGALLY PERFORM A TRAFFIC STOP?

Appellant's Brief at 6.

In his first issue, Appellant argues that the trial court imposed a sentence that exceeded the permissible statutory maximum for a first-time DUI offense, and that the sentence was therefore illegal. Appellant's Brief at 13-30. Appellant argues that the trial court's sentence of 12 months of probation plus 4 days at a DUI alternative program for his conviction for violating 75 Pa.C.S.A. § 3802(b) (DUI-high rate of alcohol with a minor in the vehicle) exceeded the statutory maximum.

Appellant asserts that 75 Pa.C.S.A. § 3803(b)(1), which pertains to the grading of DUI offenses, provides that a first-time DUI (high rate of alcohol) offender can only receive a maximum sentence of 6 months, and

- 4 -

that the trial court's sentence of 12 months of probation exceeds the statutory maximum.

Appellant acknowledges that pursuant to 78 Pa.C.S.A. § 3803(b)(5), DUI offenses where a minor under 18 years of age is an occupant of the vehicle, are graded as first degree misdemeanors which carry a statutory maximum sentence of five years. *See* 18 Pa.C.S.A § 106(b)(6). However, Appellant argues that the plain language of 75 Pa.C.S.A § 3803(b) limits the sentence in such circumstances to six months.

The trial court disagreed with Appellant. Noting that there was an apparent conflict in the statute, the trial court concluded that under the plain meaning of 75 Pa.C.S.A. § 3803(b)(5), Appellant's conviction of DUI (high rate of alcohol) with a minor as an occupant of the vehicle, was a first degree misdemeanor with a statutory maximum of five years of imprisonment.

Where reviewing a claim that raises an issue of statutory construction, our standard of review is plenary. We recongize:

> Our task is guided by the sound and settled principles set forth in the Statutory Construction Act, including the primary maxim that the object of statutory construction is to ascertain and effectuate legislative intent. 1 Pa.C.S. § 1921(a). In pursuing that end, we are mindful that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Indeed, "[a]s a general rule, the best indication of legislative intent is the plain language of a statute." In reading the plain language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage," while any words or phrases that

have acquired a "peculiar and appropriate meaning" must be construed according to that meaning. 1 Pa.C.S.1903(a). However, when interpreting non-explicit statutory text, legislative intent may be gleaned from a variety of factors, including, *inter alia:* the occasion and necessity for the statute; the mischief to be remedied; the object to be attained; the consequences of a particular interpretation; and the contemporaneous legislative history. 1 Pa.C.S. § 1921(c). Moreover, while statutes generally should be construed liberally, penal statutes are always to be construed strictly, 1 Pa.C.S. § 1928(b)(1), and any ambiguity in a penal statute should be interpreted in favor of the defendant.

Notwithstanding the primacy of the plain meaning doctrine as best representative of legislative intent, the rules of construction offer several important qualifying precepts. For instance, the Statutory Construction Act also states that, in ascertaining legislative intent, courts may apply, *inter alia,* the following presumptions: that the legislature does not intend a result that is absurd, impossible of execution, or unreasonable; and that the legislature intends the entire statute to be effective and certain. 1 Pa.C.S. § 1922(1),(2). Most importantly, the General Assembly has made clear that the rules of construction are not to be applied where they would result in a construction inconsistent with the manifest intent of the General Assembly. 1 Pa.C.S. § 1901.

*Commonwealth v. Shiffler*, 879 A.2d 185, 189-190 (Pa. 2005) (citations omitted).

The applicable statutory provisions at issue here, set forth in Title 75 (relating to vehicles), provide in pertinent part:

> **§ 3802.     Driving under influence of alcohol or controlled substance**
>
> (b)   **High rate of alcohol.**--An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.10% but less than 0.16% within two hours

> after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

**§ 3803.    Grading**

(b) Other offenses.--

(1)    An individual ... who violates section 3802(b), (e) or (f) and who has no more than one prior offense commits a misdemeanor for which the individual may be sentenced to a term of imprisonment of ***not more than six months*** and to pay a fine under section 3804.

*** * ***

(5)    An individual who violates section 3802 where a minor under 18 years of age was an occupant in the vehicle when the violation occurred commits a ***misdemeanor of the first degree***.

(emphasis added).    ***See*** 18 Pa.C.S.A. § 106(b)(6) ("A crime is a misdemeanor of the first degree if it is so designated in this title or if a person convicted thereof may be sentenced to a term of imprisonment, the maximum of which is not more than five years.").

Appellant argues that the aforementioned statutes should be construed in his favor.  Appellant asserts that § 3803(b)(1) clearly and unambiguously provides that his statutory maximum sentence is 6 months.  Appellant contends that even though the offense of DUI with a minor occupant is graded as a first degree misdemeanor, the legislature can classify an offense at a certain grade while imposing a lesser statutory maximum sentence than

is typically imposed upon a certain grade. Thus, although offenses graded as first degree misdemeanors ordinarily carry a maximum penalty of 5 years, Appellant maintains that § 3803(b)(1) makes an exception for DUI offenders with no more than one prior offense, limiting their maximum sentence to 6 months.

In support of his claim, Appellant relies on our decision in *Commonwealth v. Musau*, 69 A.3d 754 (Pa. Super. 2013). We find *Musau* inapposite, however, because *Musau* pertains to § 3803(a)(1), the language of which is distinguishable from and inapplicable to the statutory provision at issue in the present case (*i.e.*, 3803(b)(1)).

In *Musau*, the defendant, a DUI offender with one prior DUI conviction, was convicted of DUI (general impairment), 75 Pa.C.S.A. § 3802(a). Because the defendant refused to submit to chemical testing and had a prior DUI conviction, pursuant to § 3803(b)(4), the offense was graded as a first degree misdemeanor. The defendant in *Musau* argued that § 3803(a)(1) limited his statutory maximum sentence to 6 months, regardless of his refusal to submit to chemical testing.

Based on a reading of Section 3803(a)(1), a panel of this Court agreed with the defendant that his sentence could not exceed 6 months.[3]

_____

[3] It is noteworthy that *Musau* has been called into doubt by *Commonwealth v. Concordia*, 97 A.3d 366 (Pa. Super. 2014) (observing that the Commonwealth's interpretation of § 3803 was logical).

Specifically, this Court examined the language of § 3803(a)(1) which provides:

> **(a) Basic offenses**.--*Notwithstanding* the provisions of subsection (b):
>
> (1) An individual who violates section 3802(a) (relating to driving under influence of alcohol or controlled substance) and has no more than one prior offense commits a misdemeanor for which the individual may be sentenced to a term of imprisonment of not more than six months and to pay a fine under section 3804 (relating to penalties).

Because section 3803(a) began with the phrase "notwithstanding the provisions of subsection (b)", we held:

> Our Supreme Court has defined "notwithstanding" as "regardless of." ... Therefore, we hold that the plain language of the statute, giving the words their ordinary meanings, indicates as follows: regardless of the fact that refusal to submit to blood alcohol testing results in the grading of the offense as a first degree misdemeanor, the maximum sentence for a first or second DUI conviction is six months' imprisonment.

*Musau* 69 A.3d at 757-758. Thus, the defendant's statutory maximum sentence was limited to 6 months "notwithstanding" or "regardless of" the contrary provision of the law which provided that refusal to submit to testing is graded as a first degree misdemeanor which carries a maximum penalty of 5 years.

In contrast, in cases such as the one at issue here, an individual who commits a DUI with a minor in the vehicle, commits a first degree misdemeanor pursuant to § 3803(b)(5). There is **no** language in § 3803(b)(1) to indicate that "notwithstanding" the presence of a minor in the

vehicle, the statutory maximum is limited to 6 months. (**Compare with** § 3803(a) at issue in **Musau**).

Appellant nevertheless argues that because §§ 3803(b)(1) and (b)(5) are in conflict, 75 Pa.C.S.A. § 3803(b)(1) is the more specific provision and therefore prevails. Appellant's Brief at 24-30.

"Our rules of statutory construction globally instruct that a special provision in a statute 'shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.' 1 Pa.C.S. § 1933." **Commonwealth v. Ramos**, 83 A.3d 86, 92 (Pa. 2013). As applied to this case, § 3803(b)(1) is the general provision because it applies to all DUI (high rate of alcohol) offenders who have no more than one prior offense. In contrast, § 3803(b)(5) applies only to the subset of DUI (high rate of alcohol) offenders who had a minor under 18 years of age in the vehicle when the violation occurred.[4]

The more general provision, § 3803(b)(1), was enacted on September 30, 2003, and became effective February 1, 2004. The more specific provision, § 3803(b)(5), which eliminates the lenient six-month maximum

---

[4] We recognize that § 3803(b)(1) applies also to individuals who violate section 3802(a)(1) (general impairment) where there was an accident resulting in bodily injury, serious bodily injury or death of any person or in damage to a vehicle or other property, as well as individuals who violate section 3802(e) (minors) or (f) (commercial or school vehicles). However, those subsections are not at issue here and do not affect our decision.

sentence for an individual convicted of DUI where a minor was an occupant of the vehicle, was enacted May 8, 2012, and became effective July 9, 2012. Accordingly, unlike the provisions in *Musau*, § 3803(b)(5) was enacted more recently than section 3803(b)(1), indicating the legislature's intent to modify the more general terms of § 3803(b)(1), which had been in effect for more than eight years. It is apparent that in enacting § 3803(b)(5), the legislature made a policy decision to impose more severe sanctions on those who endanger children by operating a vehicle while impaired.

Accordingly, the trial court did not err in sentencing Appellant to 12 months of probation plus 4 days at a DUI alternative program. The sentence did not exceed the statutory maximum of 5 years for a first degree misdemeanor pursuant to section 3803(b)(5).

In his second issue, Appellant argues that the trial court erred in denying his suppression motion because the police officers lacked reasonable suspicion to believe that a violation of the Vehicle Code had occurred to justify the traffic stop. Appellant's Brief at 31-40.

In reviewing Appellant's challenge to the denial of his suppression motion, we are mindful:

> Our standard of review of a denial of suppression is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse

- 11 -

only if the court erred in reaching its legal conclusions based upon the facts.

***Commonwealth v. Reppert***, 814 A.2d 1196, 1200 (Pa. Super. 2002) (citations omitted).

With regard to a law enforcement officer's authority to stop a vehicle for an alleged violation, the Vehicle Code provides:

> Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(b), amended by 2003 Pa. Laws 24, § 17 (effective Feb. 1, 2004).

Case law interpreting § 6308(b) relative to whether police officers may stop a vehicle based upon reasonable suspicion or the higher standard of probable cause, focuses on the "investigative nature" of the stop. In ***Commonwealth v. Feczko***, 10 A.3d 1285, 1291 (Pa. Super. 2010) (*en banc*), this Court noted the distinction between "the investigative potential of a vehicle stop based on a reasonable suspicion of DUI as compared to other suspected violations of the Motor Vehicle Code." *Id*. at 1289, *citing* ***Commonwealth v. Sands***, 887 A.2d 261, 270 (Pa. Super. 2005). Where a vehicle stop for suspected DUI may lead to further incriminating evidence such as an odor of alcohol or slurred speech, a stop for suspected speeding

- 12 -

is unlikely to lead to further evidence relevant to that offense. *Id*.
Therefore,

> Mere reasonable suspicion will not justify a vehicle stop when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation. In such an instance, "it is encumbent [sic] upon the officer to articulate specific facts possessed by him, at the time of the questioned stop, which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the Code." *Commonwealth v. Gleason*, 785 A.2d. 983, 898 (Pa. 2001) (citation omitted). *See also Commonwealth v. Chase*, 960 A.2d 108, 116 (Pa. 2008) (reaffirming *Gleason's* probable cause standard for non-investigative detentions of suspected Vehicle Code violations).

*Feczko*, 10 A.3d at 1291.

Here, Officer Martino stopped Appellant's vehicle after he observed it completely stopped in the middle of the road, and then, when the officer approached, the vehicle began to move but swerved multiple times across the yellow lines and fog line. The officer additionally noticed that Appellant's license plate cover was obscured and illegible from a reasonable distance. Based on the foregoing observations, Officer Martino possessed the requisite probable cause to support a non-investigative stop of Appellant's vehicle. Specifically, based on his observations, the officer possessed probable cause to believe that violations of 75 Pa.C.S.A. § 3301(b) (driving at less than normal speed), 75 Pa.C.S.A. § 3714 (careless driving) and 75 Pa.C.S.A. § 1332(b)(3) (obscured license plate) were occurring. Because these are non-investigable offenses, the officer was required to demonstrate probable cause to believe that the violations occurred in order to effectuate a lawful

stop of Appellant's vehicle. Here, Officer Martino possessed probable cause to believe the aforementioned violations of the Vehicle Code were occurring and the stop was therefore constitutionally valid, such that we need not address Appellant's claim that the officer lacked reasonable suspicion to believe that he was driving under the influence of alcohol.

For the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judge Bowes joins the Opinion.

P.J.E. Bender files a Dissenting Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/18/2015