J-A22043-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RYAN ALAN KEMP, | |
| Appellant | No. 195 MDA 2015 |

Appeal from the Judgment of Sentence December 15, 2014
in the Court of Common Pleas of Centre County
Criminal Division at No.: CP-14-CR-0000547-2014

BEFORE:  BOWES, J., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:　　　　　　　　**FILED NOVEMBER 16, 2015**

Appellant, Ryan Alan Kemp, appeals from the judgment of sentence entered on December 15, 2014, following his non-jury conviction of drug delivery resulting in death, two counts of possession with intent to deliver a controlled substance, delivery of a controlled substance, and possession of drug paraphernalia.[1]  On appeal, Appellant challenges the trial court's interpretation of 18 Pa.C.S.A. § 2506(a), and the sufficiency of the evidence underlying his conviction for drug delivery resulting in death.  For the reasons discussed below, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2506(a), 35 P.S. §§ 780-113(a)(30) and (32), respectively.

We take the underlying facts and procedural history in this matter from the trial court's April 2, 2015 opinion and our independent review of the certified record.

> On January 24, 2014, [Appellant] obtained ten packets of heroin from Williamsport, Pennsylvania. That day, [Appellant] invited Elizabeth Smeltzer (hereinafter "Ms. Smeltzer") to his residence to use the heroin. That night, Ms. Smeltzer visited [Appellant] at his residence, where both used the heroin provided by [Appellant]. Ms. Smeltzer also took Klonopin (Clonazepam, a class IV substance) provided by [Appellant] that night. In the early morning of January 25, 2015, [Appellant] and Ms. Smeltzer fell asleep. When [Appellant] awoke later that morning, Ms. Smeltzer was dead. The cause of death was determined to be a drug overdose. [Appellant] was charged with [the above-listed charges].
>
> On August 26, 2014, [Appellant] filed a Motion in *Limine* to clarify what *mens rea* was required for the material elements of Drug Delivery Resulting in Death[.] . . . On September 29, 2014, a hearing for the Motion in *Limine* was held. On October 24, 2014, [the trial court] denied [Appellant's] Motion in *Limine*. On October 27, 2014, a [stipulated] nonjury trial was held and on the same day a guilty verdict was rendered for all counts charged against [Appellant].

(Trial Court Opinion, 4/02/15, at 1-2) (record citations omitted).

On December 15, 2014, following receipt of a presentence investigation report (PSI), a lengthy sentencing hearing occurred. The trial court sentenced Appellant, in the mitigated range, to a term of incarceration of not less than four nor more than twelve years with credit for two-hundred and seventy days' time-served, to be followed by a consecutive one-year term of probation. On December 17, 2014, Appellant filed a post-sentence motion, which the trial court denied on January 22, 2015. The instant,

timely appeal followed. On January 28, 2015, the trial court ordered Appellant to file a concise statement of errors complained of on appeal. **See** Pa.R.A.P. 1925(b). Appellant complied on February 6, 2015. On April 2, 2015, the trial court issued an opinion. **See** Pa.R.A.P. 1925(a).

On appeal, Appellant raises the following questions for our review:

I.      Did the [t]rial [c]ourt err in holding that [d]rug [d]elivery [r]esulting in [d]eath, 18 [Pa.C.S.A.] § 2506(a) (West), does not require any *mens rea* with respect to the death of another, a material element of the offense?

II.     Did the [t]rial [c]ourt err in finding there was sufficient evidence to sustain a conviction for [d]rug [d]elivery [r]esulting in [d]eath, § 2506, specifically the causation required relative to the *mens rea*?

(Appellant's Brief, at 7).

In his first claim, Appellant argues that the trial court erred in finding the *mens rea* intentionally applied only to the first element of Section 2506(a), asserting that the statute is inherently ambiguous. (**See id.** at 17-38). We disagree.

Initially, we note that interpreting the meaning of a statute raises a pure question of law, therefore our standard of review is *de novo* and our scope of review is plenary. **See Commonwealth v. Burwell**, 58 A.3d 790, 793 (Pa. Super. 2012), *appeal denied*, 69 A.3d 242 (Pa. 2013). Further, we acknowledge:

> Our task is guided by the sound and settled principles set forth in the Statutory Construction Act, including the primary maxim that the object of statutory construction is to ascertain and effectuate legislative intent. 1 Pa.C.S.[A.] § 1921(a). In

pursuing that end, we are mindful that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.[A]. § 1921(b). Indeed, "[a]s a general rule, the best indication of legislative intent is the plain language of a statute." In reading the plain language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage," while any words or phrases that have acquired a "peculiar and appropriate meaning" must be construed according to that meaning. 1 Pa.C.S.[A.§] 1903(a). However, when interpreting non-explicit statutory text, legislative intent may be gleaned from a variety of factors, including, *inter alia*: the occasion and necessity for the statute; the mischief to be remedied; the object to be attained; the consequences of a particular interpretation; and the contemporaneous legislative history. 1 Pa.C.S.[A.] § 1921(c). Moreover, while statutes generally should be construed liberally, penal statutes are always to be construed strictly, 1 Pa.C.S.[A] § 1928(b)(1), and any ambiguity in a penal statute should be interpreted in favor of the defendant.

Notwithstanding the primacy of the plain meaning doctrine as best representative of legislative intent, the rules of construction offer several important qualifying precepts. For instance, the Statutory Construction Act also states that, in ascertaining legislative intent, courts may apply, *inter alia*, the following presumptions: that the legislature does not intend a result that is absurd, impossible of execution, or unreasonable; and that the legislature intends the entire statute to be effective and certain. 1 Pa.C.S.[A.] § 1922(1),(2). Most importantly, the General Assembly has made clear that the rules of construction are not to be applied where they would result in a construction inconsistent with the manifest intent of the General Assembly. 1 Pa.C.S.[A.] § 1901.

*Commonwealth v. Wilson*, 111 A.3d 747, 751 (Pa. Super. 2015) (case citation omitted).

- 4 -

The trial court convicted Appellant of drug delivery resulting in death, 18 Pa.C.S.A. § 2506(a), which states:

> **(a) Offense defined.**—A person commits a felony of the first degree if the person intentionally administers, dispenses, delivers, gives, prescribes, sells or distributes any controlled substance or counterfeit controlled substance in violation of section 13(a)(14) or (30) of the act of April 14, 1972 (P.L. 233, No. 64) known as The Controlled Substance, Drug, Device and Cosmetic Act, and another person dies as a result of using the substance.

18 Pa.C.S.A. § 2506(a) (footnote omitted).

Appellant argues that Section 2506(a) is inherently ambiguous because it does not clearly set forth the *mens rea* for the material element of "another . . . dies as a result." **Id.** (**See** Appellant's Brief, at 17-18). He insists that "the Court is bound to follow the rules of lenity and statutory construction and resolve the ambiguity in the light most favorable to [Appellant]. . . . [T]he Court should . . . hold that the m*ens rea* 'intentionally' must apply to each material element of the crime." (Appellant's Brief, at 37). Moreover, Appellant contends that our Supreme Court's decision in **Commonwealth v. Ludwig**, 874 A.2d 623 (Pa. 2005), compels a conclusion that the only appropriate *mens rea* for the second element of the crime is intentional because **Ludwig** stands for the principle that "the *mens rea* requirement must still attach to every material element of the crime." (**Id.** at 29; **see also id.** at 26-29).

The Commonwealth argues that the statute is not inherently ambiguous and that the adverb "intentionally," modifies only the first

dependent clause, "administers . . . any controlled substance. . ." (Commonwealth's Brief, at 8). The Commonwealth maintains that this Court should apply the default *mens rea* codified at 18 Pa.C.S.A. § 302(c), and hold that the appropriate *mens rea* for the second element is recklessness. (***See id.*** at 10-11). We find the Commonwealth's position compelling.

Initially, we are not persuaded that **Ludwig** mandates that the *mens rea* for the second element of the crime is "intentionally." In **Ludwig**, our Supreme Court addressed a challenge that an earlier version of Section 2506 was unconstitutionally vague because it did not "set forth the mental state required for criminal liability." ***See Ludwig***, ***supra*** at 626. The now repealed version of Section 2506 stated:

> **A person commits murder of the third degree** who administers, dispenses, delivers, gives, prescribes, sells or distributes any controlled substance or counterfeit controlled substance in violation of section 13(a)(14) or (30) of the act of April 14, 1972 (P.L. 233, No. 64) known as The Controlled Substance, Drug, Device and Cosmetic Act, and another person dies as a result of using the substance.

18 Pa.C.S.A. § 2506(a) (repealed Sept. 6, 2011) (emphasis added, footnote omitted). The Court found that while that version of Section 2506(a) did not contain an explicit *mens rea* "the General Assembly has provided a default culpability provision in Section 302(c)[2] of the Crimes Code that is to be

_____

[2] The relevant portions of Section 302 state:

*(Footnote Continued Next Page)*

applied to determine the appropriate element of culpability." ***Ludwig***, ***supra*** at 630. The Court concluded that, by designating the crime as one of murder in the third degree, culpability was otherwise provided because it had long held that the *mens rea* for murder in the third degree was malice. ***See id.*** at 630-31.

We see nothing in ***Ludwig*** that mandates that the *mens rea* for the second element of drug delivery resulting in death be intentional. Rather, ***Ludwig*** found that the statute was not unconstitutionally vague because, in the absence of specific *mens rea*, the Legislature articulates the applicable *mens rea* at Section 302 of the Crimes Code. ***See id.*** It further holds that we must look to the language of the statute to ascertain the intent of the Legislature. ***See id.***

_(Footnote Continued)_ ────────────

> **(a) Minimum requirements of culpability.**—Except as provided in section 305 of this title (relating to limitations on scope of culpability requirements), a person is not guilty of an offense unless he acted intentionally, knowingly, recklessly or negligently, as the law may require, with respect to each material element of the offense.
>
> \* \* \*
>
> **(c) Culpability required unless otherwise provided.—** when the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly or recklessly with respect thereto.

18 Pa.C.S.A. §§ 302(a) and (c).

By arguing that the statute is ambiguous and that the appropriate *mens rea* is intentional, Appellant ignores both the plain language of the statute and the import of the change of language from the 1998 version of the statute discussed in **Ludwig** to the 2011 version[3] at issue in the instant matter. He also disregards basic principles of statutory construction.

In 2011, the Legislature removed the phrase "[a] person commits murder of the third degree who . . . [,]" 18 Pa.C.S.A. § 2506(a) (repealed Sept. 6, 2011), and substituted "[a] person commits a felony of the first degree if the person intentionally. . ." 18 Pa.C.S.A. § 2506(a) (effective Sept. 6, 2011). A discussion of House Bill 396 (of April 27, 2011),[4] makes it clear that the Legislature deliberately changed the wording to remove the *mens rea* of malice and did so with the intention of making it easier to convict and impose greater penalties on individuals who sold drugs when those drugs resulted in the death of another. **See** H. No. 29, 195 Sess., at 757-58 (Pa. 2011).

---

[3] 18 Pa.C.S.A. § 2506 was amended in 2014; however, that version did not take effect until after Appellant's conviction. Further, the amendment is of no import for our review because the definition of drug delivery resulting in death remains the same. **See** 18 Pa.C.S.A. § 2506(a) (effective August 18, 2014).

[4] The language of section 2506(a) in HB 396, is identical to that contained in the 2011 version of 18 Pa.C.S.A. § 2506(a). **See** H.B. 396 2011, §1; 18 Pa.C.S.A. § 2506(a) (effective April 27, 2011).

Moreover, in a recent binding opinion, a panel of this Court[5] addressed the question of whether 18 Pa.C.S.A. § 2506 was unconstitutionally vague because it did not clearly indicate the requisite *mens rea* for conviction. **See Commonwealth v. Kakhankham**, -- A.3d --, 2015 WL 6508110, at ** 4-6 (Pa. Super., filed October 28, 2015). In concluding that the statute was not unconstitutionally vague, we specifically held that the *mens rea* for the first section is clearly defined, stating, "[t]he first element of the crime is met if one 'intentionally' administers, dispenses, delivers, gives, prescribes, sells or distributes any controlled substance or counterfeit controlled substance." **Id.** at *4.

Further, we addressed the identical claim raised herein, that Section 2506 can be read as requiring that the second ("results from") element also be "intentionally." **See id.** at *5; (**see also** Appellant's Brief, at 17-38). We disagreed, finding that the correct *mens rea* for the second element is the default culpability provision found at 18 Pa.C.S.A. § 302(c). **See Kakhankham**, **supra** at *6. Thus, we held, ". . . Section 302(c) provides the *mens rea* requirement for the second element of Section 2506, *i.e.*,

---

[5] **See Commonwealth v. Pepe**, 897 A.2d 463, 465 (Pa. Super. 2006) ("It is beyond the power of a Superior Court panel to overrule a prior decision of the Superior Court, except in circumstances where intervening authority by our Supreme Court calls into question a previous decision of this Court."), *appeal denied*, 946 A.2d 686 (Pa. 2008).

death must be at least 'reckless.'" *Id.* Therefore, Appellant's first claim lacks merit.

In his second issue, Appellant challenges the sufficiency of the evidence underlying his conviction for drug delivery resulting in death. (*See* Appellant's Brief, at 38-44). Our standard of review for sufficiency of the evidence claims is well settled:

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, **when viewed in a light most favorable to the Commonwealth as verdict winner**, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.
>
> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Tarrach*, 42 A.3d 342, 345 (Pa. Super. 2012) (citation omitted) (emphasis added).

Here, Appellant does not dispute that he supplied the drugs to the victim or that her death resulted from an overdose. (*See* N.T. Trial, 10/27/14, at 8-9). Instead, he claims that the Commonwealth failed to prove that he caused the victim's death because it was not foreseeable that

the use of heroin in combination with Klonopin would result in death. (**See** Appellant's Brief, at 38-44). We disagree.

As discussed above, with respect to the second element, "another person dies as a result of using the substance[,]" 18 Pa.C.S.A. § 2506(a), under Section 302(c) the Commonwealth need only prove that Appellant acted recklessly. The law defines "recklessly" as a state of mind:

> . . . [where the actor] consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(3). In other words, recklessness does not require that the actor knows that his actions will kill the victim but rather that he acts in the face of known danger with the risk of certain results. Further, the law states that conduct is the cause of a result when: "it is an antecedent but for which the result in question would not have occurred[.]" 18 Pa.C.S.A. § 303(a)(1). Moreover, section 303 goes on to state:

> **(c) Divergence between probable and actual result.**— When recklessly or negligently causing a particular result is an element of an offense, the element is not established if the actual result is not within the risk of which the actor is aware or, in the case of negligence, of which he should be aware unless:
>
> > (1) the actual result differs from the probable result only in the respect that a different person or different property is injured or affected or that the probable injury or harm would have been more serious or more extensive than that caused; or

(2) the actual result involves the same kind of injury or harm as the probable result and is not too remote or accidental in its occurrence to have a bearing on the liability of the actor or on the gravity of his offense.

18 Pa.C.S.A. § 303(c).

Here, the record reflects that Appellant told police that he was going to jail because the drugs that he supplied killed the victim. (**See** N.T. Trial, 10/27/14, at 6-7, Commonwealth Exhibit A, at 5). Appellant had a lengthy history of drug use and failed rehabilitation and had relapsed several times during the year. (**See id.** at Commonwealth Exhibit C, Narrative of Corporal Timothy Stringer, at 8; Supplement of March 19, 2014, at 5). He acknowledged to police that prior to falling asleep the victim became incoherent and "he had to bring her back out of it." (**Id.** at Commonwealth Exhibit C, Narrative of Officer Andrew Ettaro, at 2). Appellant admitted that he buys and sells heroin illegally but said that he sells drugs "for fun." (**Id.** at Commonwealth Exhibit C, Narrative of Officer Jonathan Mayer, at 5). In text messages sent after the victim's death Appellant stated that it was his fault that the victim did "dope." (**Id.** at Commonwealth Exhibit H, Text Message, at unnumbered p. 3). Appellant was aware of the danger associated with the use of heroin because he was in and out of rehabilitation and stated that his giving the victim the drugs made him responsible for her

death.[6] (***See id.*** at Commonwealth Exhibit C, Narrative of Corporal Timothy Stringer, at 8; Narrative of Officer Jonathan Mayer, at 5). Appellant's own exhibits at trial highlight the dangerousness of heroin use and that between 2009-14, it caused the death of almost 3,000 Pennsylvanians. (***See id.*** at Commonwealth Exhibit C, Supplement of January 28, 2014, at 5; Defense Exhibit 4, Heroin Report of September 2014, at p. 1). Further, as this Court has stated:

> [I]t is certain that frequently harm will occur to the buyer if one sells heroin. Not only is it criminalized because of the great risk of harm, but in this day and age, everyone realizes the dangers of heroin use. It cannot be said that [unauthorized heroin provider] should have been surprised when [victim] suffered an overdose and died. While not every sale of heroin results in an overdose and death, many do.

***Kakhankham***, ***supra*** at *7 (citation omitted).

Thus, in sum, the evidence showed that Appellant intentionally supplied the victim with heroin. He was a known user of heroin and aware of the risks, including possible death from an overdose. On the night in question, Appellant observed the victim having an adverse reaction to the drug. He admitted that it was his fault that the victim used heroin and that the heroin he gave her caused her death. This evidence was sufficient to

---

[6] In its brief, the Commonwealth notes that the evidence at trial showed that Appellant nearly died from a heroin overdose. (***See*** the Commonwealth's Brief, at 12-13). However, we cannot find this information at the location cited by the Commonwealth, and can only find reference to it at sentencing. (***See*** N.T. Sentencing, 12/15/14, at 19).

show that he knew the risks of heroin use, including death, but recklessly disregarded them when he intentionally supplied the victim with heroin, which killed her. That is all that is required to sustain a conviction for drug delivery resulting in death. **See** 18 Pa.C.S.A. § 2506(a); **see also Kakhankham**, **supra** at *7; **Commonwealth v. Bradley**, 69 A.3d 253, 257 (Pa. Super. 2013), *appeal denied*, 79 A.3d 1095 (Pa. 2013) (Commonwealth met its burden of proving *mens rea* of recklessness where evidence showed defendant ignored high risk of injury from twisting arm behind victim's back, resulting in broken bone); **Commonwealth v. Fabian**, 60 A.3d 146, 155-56 (Pa. Super. 2013), *appeal denied*, 69 A.3d 600 (Pa. 2013) (Commonwealth met its burden of proving *mens rea* of recklessness where after complaints of problems with van, defendant/mechanic failed to make interior check of van's brake system, resulting in accident that put occupants at risk of death or serious injury). Appellant's second claim lacks merit.

Accordingly, for the reasons discussed above, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/16/2015