J-A09034-16

2016 PA Super 154

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ERIC JOHN STINE, | |
| Appellant | No. 1124 MDA 2015 |

Appeal from the Judgment of Sentence February 5, 2015
in the Court of Common Pleas of Centre County
Criminal Division at No.: CP-14-CR-0000308-2013

BEFORE:  FORD ELLIOTT, P.J.E., JENKINS, J., and PLATT, J.[*]

OPINION BY PLATT, J.:

**FILED JULY 18, 2016**

Appellant, Eric John Stine, appeals from the judgment of sentence imposed on February 5, 2015, following his non-jury conviction of three counts of driving under the influence (DUI).[1]  On appeal, Appellant challenges the admissibility of the amphetamine test results.  For the reasons discussed below, we affirm.

We take the underlying facts and procedural history in this matter from the December 3, 2014 notes of testimony and our independent review of the certified record.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S.A. §§ 3802(d)(1)(i), (ii) and (iii).

On September 14, 2012, Bellefonte Borough Police Officer Andy Berry noticed that Appellant's vehicle had an expired registration. (**See** N.T. Trial, 12/03/14, at 5-6). When making contact with Appellant, Officer Berry observed that his pupils were dilated, he kept clenching his jaw, and there was a brown substance in his nostril. (**See id.** 7). An experienced police officer with special training in the detection of impaired drivers, Officer Berry believed that Appellant was driving under the influence. (**See id.** at 5-7).

Because Appellant performed poorly on field sobriety tests, Officer Berry transported him for an evaluation by a drug recognition expert, State College Police Officer Robert Keen. (**See id.** at 8-9). After performing an evaluation of Appellant, Officer Keen believed that Appellant was under the influence of narcotics and recommended that Officer Berry transport him to Mount Nittany Medical Center for a blood draw. (**See id.** at 28-29). The results of the blood test showed that Appellant was under the influence of various narcotics. (**See id.** at 44-46).

On April 30, 2013, Appellant filed a motion to suppress claiming that the police lacked reasonable suspicion for the traffic stop and that any statements to the police were made in violation of the United States Supreme Court ruling in **Miranda v. Arizona**, 384 U.S. 436 (1966). (**See** Appellant's Omnibus Pre-Trial Motion, 4/30/13, at 2-4). The trial court denied the motion on June 25, 2013.

At trial, Appellant objected to any testimony about, and the admission of, amphetamine testing and its results. (*See* N.T. Trial, 12/03/14, at 42-43). The trial court overruled the objection. (*See id.* at 44). Following the bench trial, on December 3, 2014, the trial court found Appellant guilty of driving under the influence. On February 5, 2015, the trial court sentenced Appellant to a term of incarceration of not less than seventy-two hours nor more than six months. Appellant filed a post-sentence motion that same day. The trial court denied the motion on June 2, 2015. The instant, timely appeal followed. On July 8, 2015, the trial court ordered Appellant to file a concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b). Appellant filed a timely Rule 1925(b) statement on July 16, 2015. The trial court issued an opinion on August 17, 2015. *See* Pa.R.A.P. 1925(a).

On appeal, Appellant raises the following question for our review:

1. [Was it] legal error for the [t]rial [c]ourt to admit the amphetamine test results as the testing for them was done using liquid chromatography and liquid chromatography [tests] are not statutorily approved[?]

(Appellant's Brief, at 1).

On appeal, Appellant contends that the trial court erred in admitting the results of the liquid chromatography test. (*See id.* at 3). Specifically, Appellant maintains that this test is not one that is approved for use in the Pennsylvania Code. (*See id.* at 5-6). We disagree.

- 3 -

Our standard of review is well-settled; we may only reverse a trial court's ruling regarding the admissibility of evidence if the trial court abused its discretion. **See Commonwealth v. O'Brien**, 836 A.2d 966, 968 (Pa. Super. 2003), *appeal denied*, 845 A.2d 817 (Pa. 2004). However, we note that interpreting the meaning of a statute raises a pure question of law, therefore our standard of review is *de novo* and our scope of review is plenary. **See Commonwealth v. Burwell**, 58 A.3d 790, 793 (Pa. Super. 2012), *appeal denied*, 69 A.3d 242 (Pa. 2013). Further, we acknowledge:

> Our task is guided by the sound and settled principles set forth in the Statutory Construction Act, including the primary maxim that the object of statutory construction is to ascertain and effectuate legislative intent. 1 Pa.C.S.[A.] § 1921(a). In pursuing that end, we are mindful that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.[A]. § 1921(b). Indeed, "[a]s a general rule, the best indication of legislative intent is the plain language of a statute." In reading the plain language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage," while any words or phrases that have acquired a "peculiar and appropriate meaning" must be construed according to that meaning. 1 Pa.C.S.[A. §] 1903(a). However, when interpreting non-explicit statutory text, legislative intent may be gleaned from a variety of factors, including, *inter alia*: the occasion and necessity for the statute; the mischief to be remedied; the object to be attained; the consequences of a particular interpretation; and the contemporaneous legislative history. 1 Pa.C.S.[A.] § 1921(c). Moreover, while statutes generally should be construed liberally, penal statutes are always to be construed strictly, 1 Pa.C.S.[A] § 1928(b)(1), and any ambiguity in a penal statute should be interpreted in favor of the defendant.
>
> Notwithstanding the primacy of the plain meaning doctrine as best representative of legislative intent, the rules of construction offer several important qualifying precepts. For

- 4 -

instance, the Statutory Construction Act also states that, in ascertaining legislative intent, courts may apply, *inter alia*, the following presumptions: that the legislature does not intend a result that is absurd, impossible of execution, or unreasonable; and that the legislature intends the entire statute to be effective and certain. 1 Pa.C.S.[A.] § 1922(1),(2). Most importantly, the General Assembly has made clear that the rules of construction are not to be applied where they would result in a construction inconsistent with the manifest intent of the General Assembly. 1 Pa.C.S.[A.] § 1901.

***Commonwealth v. Wilson***, 111 A.3d 747, 751 (Pa. Super. 2015), *appeal denied*, 128 A.3d 221 (Pa. 2015) (case citation omitted).

Here, Appellant argues that 75 Pa.C.S.A. § 1547(c)[2] governs this case. (***See*** Appellant's Brief, at 3). He maintains that 75 Pa.C.S.A. § 1547(c)(2)(i)[3] has three requirements with respect to admissibility of laboratory tests for drug and alcohol:

---

[2] Section 1547(c) provides that:

> **(c) Test results admissible in evidence.**—In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3802 or any other violation of this title arising out of the same action, the amount of alcohol or controlled substance in the defendant's blood, as shown by chemical testing of the person's breath, blood or urine, which tests were conducted by qualified persons using approved equipment, shall be admissible in evidence.

75 Pa.C.S.A. § 1547(c).

[3] Subsection (c)(2)(i) provides that:

> (2)(i) Chemical tests of blood or urine, if conducted by a facility located in this Commonwealth, shall be performed by a clinical laboratory licensed and approved by the Department of Health

*(Footnote Continued Next Page)*

1. [The test must be p]erformed in a lab licensed and approved by the Dept. of Health;

2. The test must be done using a procedure prescribed by the Dept. of Health;

3. The test must be done on equipment prescribed by the Dept. of Health.

(Appellant's Brief, at 4).  Appellant concedes that the Department of Health approved the laboratory used in the instant matter for drug and alcohol testing, but claims that the test does not meet the second and third criteria. (***See id.*** at 4-5).  Specifically, he argues that the test used must be on the list of tests approved in the Pennsylvania Code and that liquid chromatography is not on the approved list.  (***See id.*** at 5-6).  We disagree.

The sections of the Code relied upon by Appellant are found at 28 Pa. Code 5.101-5.104.  Section 5.101 states:

> The purpose of §§ 5.101—5.104 (relating to equipment to determine blood alcohol content under the Vehicle Code and the Fish and Boat Code) is to satisfy the requirements of 75 Pa.C.S.[A.] § 1547(c) and (k) and 30 Pa.C.S.[A.] § 5125(c) and (k) (relating to chemical testing to determine amount of alcohol or controlled substance).

28 Pa. Code § 5.101.  Section 5.103 states in pertinent part:

*(Footnote Continued)* _____

> for this purpose using procedures and equipment prescribed by the Department of Health or by a Pennsylvania State Police criminal laboratory.  For purposes of blood and urine testing, qualified person means an individual who is authorized to perform those chemical tests under the act of September 26, 1951 (P.L. 1539, No. 389), known as The Clinical Laboratory Act.

75 Pa.C.S.A. § 1547(c)(2)(i) (footnote omitted).

**Blood tests for blood alcohol content.**

> Equipment used for blood analysis **to determine the amount of alcohol in a person's blood** which performs the analysis by means of gas chromatography, enzymatic procedures, distillation procedures or diffusion procedures is approved by the Department . . .

28 Pa. Code § 5103 (emphasis added). The language in this section of the Code is explicit, therefore, we look to the plain meaning of language, **see Wilson**, **supra** at 751.

Here, the Code specifically and clearly states this is the equipment and/or tests a laboratory may use to test for blood alcohol content. **See** 28 Pa. Code § 5103. There is nothing in the plain language of this section of the Code with respect to controlled substance testing and nothing to suggest that the General Assembly intended this list to apply to controlled substance testing. Had the drafters wanted to include controlled substance testing in the Section, they could have added the phrases "controlled substance" or the "amount of alcohol or a controlled substance in a person's blood," as they did in Section 5.101. They chose not to do so and we have no basis for reading such phrases into the explicit language of the Code. **See Wilson**, **supra** at 751.

Moreover, as noted above, Appellant concedes that the Department of Health approved the laboratory in question. (**See** Appellant's Brief, at 4-5). The Pennsylvania Code specifically states that in order to receive approval from the Department of Health, a laboratory must provide, in pertinent part:

(4) A list of the major laboratory equipment to be utilized, including the manufacturer's name and model number, and other pertinent specifications as may be required on the application form.

(5) The tests to be performed in the clinical laboratory.

(6) The internal and external quality control systems to be employed in the clinical laboratory.

28 Pa. Code § 5.11(c)(4), (5) and (6). Thus, by granting the laboratory its permit, the Department of Health knew that it would be using a liquid chromatograph and knew what tests it would be performing and approved its use. Accordingly, we conclude that Section 5.103, particularly when read in combination with Section 5.11(c), does not bar this equipment for controlled substance testing.

In any event, Appellant has not provided any legal support for his interpretation of Section 5.103, which flies in the face of the explicit language of the Code. In addition, albeit on different grounds, this Court has upheld a driving under the influence conviction based upon the evidence resulting from a liquid chromatography test. *See Commonwealth v. Weaver*, 76 A.3d 562, 570-71 (Pa. Super. 2013), *aff'd per curiam*, 105 A.3d 656 (Pa. 2014). In sum, Appellant has not shown that his reading of Section 5.103 is correct. Thus, the trial court neither made an error of law nor abused its discretion in admitting the liquid chromatography tests results. *See O'Brien*, *supra* at 968.

Accordingly, for the reasons discussed above, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/18/2016