J-A17032-19

2020 PA Super 95

| | | |
|---|---|---|
| KIMBERLY L. ADKINS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHNSON & JOHNSON, ETHICON, | : | |
| INC. INDIVIDUALLY AND D/B/A | : | |
| ETHICON, GYNECARE, SECANT | : | No. 2700 EDA 2017 |
| MEDICAL, INC. SECANT MEDICAL, | : | |
| LLC, PRODESCO, INC. AND SECANT | : | |
| MEDICAL | : | |
| | : | |
| | : | |
| APPEAL OF: ETHICON, INC. AND | : | |
| JOHNSON & JOHNSON | : | |

Appeal from the Order Entered July 19, 2017
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  July Term, 2013 No. 919

BEFORE:  PANELLA, P.J., OLSON, J., and FORD ELLIOTT, P.J.E.

CONCURRING AND DISSENTING OPINION BY OLSON, J.: Filed: April 15, 2020

I agree with the learned Majority that Kimberly Adkins ("Adkins") did not waive her challenge to the weight of the evidence when she did not object to the trial court's jury instructions, verdict sheets, or the verdict itself.  I am, however, unable to agree with my learned colleagues that this panel should affirm, in its entirety, the trial court's order directing a new trial on the grounds that the jury's verdict was against the weight of the evidence.  I agree with my colleagues that a "no causation" finding as to Adkins' claim for surgical removal of the TCT SECUR pelvic mesh device (the "Device") **was** against the evidence since there was no explanation other than the presence of the defective Device for why Adkins underwent surgical removal of the mesh

product. However, I would hold that, because Ethicon, Inc. and Johnson & Johnson (collectively "Ethicon") presented evidence at trial showing that factors wholly unrelated to the Device may have caused Adkins' pelvic conditions, the jury's "no causation" finding as to her claims for vaginal bleeding, pelvic pain, vaginal pain, palpable mesh, dyspareunia, and mesh exposure was not against the weight of the evidence. Accordingly, for the reasons set forth below, I concur in part and dissent in part.

In large part, the Majority affirms the trial court's determination that the jury's verdict was against the weight of the evidence because it finds that "Ethicon's causation expert agreed on cross-examination that the Device caused certain of Adkins' injuries." Majority Opinion at 9. To reach this conclusion, the Majority cites testimony offered by Ethicon's causation expert in which he agrees that from 2011 to 2012, "mesh-related" problems experienced by Adkins included several conditions, including vaginal bleeding, pelvic pain, vaginal pain, pain during intercourse, scratching of her sexual partner, mesh exposure, and surgical removal. *See id.* at 9-10. On the strength of this testimony, the Majority concludes that "[t]he record clearly demonstrates that it was undisputed that from 2011 to 2012, the erosion of the mesh as found to be a defect by the jury caused Adkins to suffer [from the foregoing injuries and conditions]." *Id.* at 10. In the Majority's view, the jury's "no causation" finding was against the weight of the evidence because there was "no[] conflict in the testimony with respect to the injuries the Device caused in 2011 to 2012[.]" *Id.*

Unlike the Majority, I do not believe that the evidence, particularly the **single** exchange lifted from the cross-examination testimony of Ethicon's causation expert, produced such clear cut support of a causation verdict favorable to Adkins and justified the trial court casting aside the jury's finding on causation. As the Majority acknowledges, the substantive principles of Ohio product liability law that govern this dispute require a plaintiff to show both a defect in the product manufactured and sold by the defendant **and that *the defect* directly and proximately caused the plaintiff's injuries and losses**. *See* Majority Opinion at 8-9 (citing cases). The jury here found that the Device was defectively designed and that the warnings given by Ethicon were inadequate; however, the jury rejected a finding that a defect in the Device proximately caused any injury sustained by Adkins.

As a preliminary matter, the plain language of the sole exchange of expert testimony cited by the Majority did not contradict the jury's finding that causation was unproven. In the cited passage, Ethicon's expert agreed that, from 2011 through 2012, Adkins experienced various conditions that were "mesh-related." ***See id*.** at 9, *citing* N.T. Trial, 6/7/17, at 66. Notwithstanding this response, the fact that an injury or condition may be "mesh-related" does not mean that a **defect** in the mesh was the proximate cause of an injury. A condition may be "mesh-related" because it resulted from the surgical mesh implantation procedure or because the condition and the implant are both located in the same part of Adkins' anatomy. In short, given the ambiguity of the terms employed in the question, it was for the jury to decide whether the

words "mesh-related" meant "produced or caused by a defect in the mesh" or referred to some other non-causal connection between the mesh and Adkins' conditions.

Inferential arguments in support of setting aside the jury's determination and awarding a new trial on grounds that the verdict was against the weight of the evidence are even less persuasive in view of the substantial evidence and testimony which tended to establish that several factors unrelated to the Device (and, more specifically, unrelated to any alleged defects in the Device), including implantation procedures, Adkins' smoking history, tissue atrophy, non-adherence to post-surgical instructions, and the lack of feasible alternative designs that would have avoided any alleged risks, led to the injuries sustained by Adkins.[1]  *See* Ethicon's Brief at 33-34 and 40.  Ethicon thus asserts that the verdict was not contrary to the

_____

[1] In fact, the same defense expert cited by the Majority in support of its conclusion also testified that Adkins' vaginal tissue erosion in 2012 was a known risk of her surgical procedure that could be explained by poor wound healing characteristics, smoking, tissue atrophy, and age.  *See* N.T. Trial, 6/7/17, at 78-80 ("So basically, there's medical conditions [such as smoking and poor wound healing], there's local factors like atrophy, and there's sort of like following the rules to let things heal well.  And as a basic outline, those are the things that would increase the risk for erosion.").  In view of this extensive testimony, it would not be accurate, in my assessment, to characterize the cited excerpt of the expert's opinion as a concession that a defect in the Device acted as the proximate cause of all of Adkins' injuries and losses.  Instead, the record, viewed as a whole, reflects that several factors were presented to the jury as potential causes of Adkins' alleged conditions and damages.  Within the context of the hotly contested dispute before us, the fact that the jury credited one or more causation factors that were not favorable to Adkins does not support the conclusion that the verdict was shocking or that a new trial is warranted.

evidence because the jury heard evidence that Adkins' conditions and damages were not caused by defects in the Device. Against the factual record developed at trial, and bearing in mind the relevant principles of tort law, I am reluctant to conclude, as the Majority seems to do, that the agreement by Ethicon's causation expert that Adkins sustained "mesh-related" problems between 2011 and 2012 equates to a concession that defects in the Device were a direct and proximate cause of Adkins' injuries and losses. **Compare** Majority Opinion at 10.

Less obvious is the unstated line of reasoning gleaned from the Majority's rationale. After reciting an exchange in which Ethicon's expert agreed that Adkins experienced "mesh-related" problems from 2011 through 2012, the Majority concludes that "the erosion of the mesh as found to be defective by the jury **caused** Adkins to suffer the following injuries: vaginal bleeding, pelvic pain, vaginal pain, palpable mesh, pain with sex, and mesh exposure in her vagina. There is no dispute that because the Device caused these injuries, Adkins had to undergo surgical removal of the device." Majority Opinion at 10 (emphasis added). The Majority's logic is clear, if not expressly stated: if a product later found to be defective has been linked to injuries, it follows, *a fortiori*, that a defect in the product must have been the proximate cause of **all** of the injuries with which it is associated.

I cannot agree with this rationale given the record in this case. Merely linking a defective product to an injury, loss, or condition is simply not the same as demonstrating its causal connection to alleged damages. Here, the

- 5 -

jury heard substantial evidence explaining why a defect in the Device did not cause most of Adkins' conditions. In the face of such evidence, I am not convinced that the jury's "no causation" finding for the majority of Adkins' conditions ran contrary to the weight of the evidence.[2]

I realize that we must give the gravest consideration to the findings and reasons advanced by a trial judge when reviewing a determination that a verdict was against the weight of the evidence. I also recognize that this is one of the least assailable rulings that can be issued by a trial court. *See* ***Brown v. Trinidad***, 111 A.3d 755, 770 (Pa. Super. 2015). However, under the facts and circumstances of this case, I cannot agree that the trial court properly exercised its discretion when it granted a new trial as to all of Adkins' alleged losses and damages. Thus, I must respectfully concur in part and dissent in part.

_____

[2] As there was no evidence of alternative reasons for removing the defective Device, I would agree that the jury's "no causation" finding as to surgical removal of the Device (as a condition or loss separate from the other vaginal conditions) was against the weight of the evidence. Hence, I would award a new trial limited to this claim.