J-S06039-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
CARY JAMAR PALMER, :
:
Appellant : No. 2414 EDA 2017

Appeal from the Judgment of Sentence June 8, 2017
in the Court of Common Pleas of Pike County,
Criminal Division at No(s):  CP-52-CR-0000500-2015

BEFORE:  BOWES, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                **FILED APRIL 13, 2018**

Cary Jamar Palmer ("Palmer") appeals from the judgment of sentence imposed following his convictions of driving under the influence of alcohol ("DUI") and roadways laned for traffic.  ***See*** 75 Pa.C.S.A. §§ 3802(a)(1); 3309(1).  We affirm.

On July 19, 2015, at approximately 3:40 a.m., Pennsylvania State Trooper Nicholas J. Scochin ("Trooper Scochin") observed a vehicle, driven by Palmer, travelling on Route 739 in Pike County.  Trooper Scochin observed Palmer's vehicle weave back and forth across the lane of traffic over the double yellow line and white fog line on multiple occasions.  These observations were confirmed by a motor vehicle recording in Trooper Scochin's vehicle.  Based upon his training, Trooper Scochin believed the driver to be under the influence of alcohol or drugs.  As a result, Trooper Scochin initiated a traffic stop of the vehicle.

Upon approaching Palmer, Trooper Scochin noticed a strong smell of alcohol emanating from Palmer. Trooper Scochin administered two field sobriety tests on Palmer: the walk and turn test and the one-leg stand test. Palmer passed the walk and turn test, but failed the one-leg stand test. Thereafter, Trooper Scochin arrested Palmer on suspicion of DUI. Trooper Scochin read Palmer the implied consent warnings, and asked Palmer to submit to a breath test. Palmer refused to conduct the breath test.

Palmer was charged with DUI, roadways lined for traffic, and notice of change of name or address. Palmer filed a Motion to Suppress Evidence, arguing that the stop was illegal. After a hearing, the trial court denied the Motion to Suppress. Following a non-jury trial, Palmer was found guilty of DUI and roadways lined for traffic; and not guilty of notice of change of name or address. The trial court sentenced Palmer to 72 hours to 6 months in prison, and a $1,000 fine for the DUI conviction, and a $25 fine for the roadways lined for traffic offense. The trial court granted Palmer immediate parole. Palmer filed a Post-Sentence Motion, which the trial court denied.

Palmer filed a timely Notice of Appeal and a court-ordered Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement.

On appeal, Palmer raises the following questions for our review:

1. Did the trial [c]ourt err when it determined that the stop of [] Palmer was lawful?

2. Did the trial [c]ourt err when it held probable cause existed to stop [] Palmer?

3. Was the conviction of [] Palmer against the weight of the evidence?

Brief for Appellant at 5 (footnote omitted).

We will address Palmer's first two claims together, as they are related. Palmer contends that the trial court erred in denying his Motion to Suppress Evidence, as the traffic stop was not supported by probable cause. *Id.* at 10, 13, 15. Palmer argues that while Trooper Scochin testified to observing Palmer's vehicle moving over the double yellow line and fog line multiple times, he also confirmed that Palmer did not make any improper turns, was not speeding, never left the lane of traffic, the roadway was curvy and narrow, and there was no traffic on the road. *Id.* at 11-12, 16, 17; *see also id.* at 12 (noting that Trooper Scochin could not recall how many times Palmer weaved over the lines). Palmer also asserts that because Trooper Scochin initiated the stop to issue a citation for DUI, and did not conduct the stop for any investigatory purpose, the Commonwealth should not be allowed to support the stop under the reasonable suspicion standard. *Id.* at 14; *see also id.* at 14-15 (arguing that even under the reasonable suspicion standard, Palmer's actions did not give rise to reasonable suspicion that he was driving while under the influence). Palmer claims that because his conduct was momentary in nature, and he posed no danger to himself or other motorists, the stop was unlawful. *Id.* at 17.

Our standard of review is as follows:

An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Ford*, 175 A.3d 985, 989 (Pa. Super. 2017) (citation omitted).

The Motor Vehicle Code sets forth a law enforcement officer's authority to stop a vehicle for an alleged violation as follows:

Whenever a police officer … has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(b).

Traffic stops based on a reasonable suspicion: either of criminal activity or a violation of the Motor Vehicle Code under the authority of Section 6308(b) must serve a stated investigatory purpose. In effect, the language of Section 6308(b)—to secure such other information as the officer may reasonably believe to be

necessary to enforce the provisions of this title—is conceptually equivalent with the underlying purpose of a **Terry**[1] stop.

Mere reasonable suspicion will not justify a vehicle stop when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation. In such an instance, it is encumbent [*sic*] upon the officer to articulate specific facts possessed by him, at the time of the questioned stop, which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the Code.

*Commonwealth v. Feczko*, 10 A.3d 1285, 1291 (Pa. Super. 2010) (*en banc*) (citations, quotation marks, and emphasis omitted, footnote added); *see also Commonwealth v. Chase*, 960 A.2d 108, 116 (Pa. 2008) (stating that to conduct a non-investigative stop for a violation of the Motor Vehicle Code, a police officer must have probable cause to believe an offense has occurred). Thus, there is a "distinction between the investigative potential of a vehicle stop based on a reasonable suspicion of DUI as compared to other suspected violations of the Motor Vehicle Code." *Commonwealth v. Busser*, 56 A.3d 419, 423 (Pa. Super. 2012) (citation and quotation marks omitted); *see also Chase*, 960 A.2d at 116 (noting that "[e]xtensive case law supports the conclusion [that] a vehicle stop for DUI may be based on reasonable suspicion, as a post-stop investigation is normally feasible."); *Commonwealth v. Sands*, 887 A.2d 261, 270 (Pa. Super. 2005) (stating that "a suspected violation for DUI is in fact a scenario where further investigation almost invariably leads to the most incriminating type of evidence.").

---

[1] *Terry v. Ohio*, 392 U.S. 1 (1968).

In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. **Commonwealth v. Holmes**, 14 A.3d 89, 95 (Pa. 2011). In making this determination, a court must give "due weight to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience." **Sands**, 887 A.2d at 272 (citation and quotation marks omitted). "[T]he totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer." **Commonwealth v. Hilliar**, 943 A.2d 984, 990 (Pa. Super. 2008) (citation omitted). Further, "when the existence of reasonable suspicion combines with the expectation that the stop will allow light to be shed on the relevant matters, the stop is not unconstitutional." **Chase**, 960 A.2d at 115.

At the suppression hearing, Trooper Scochin testified that on July 19, 2015, at approximately 3:40 a.m., he was on duty in a marked patrol vehicle driving north on Route 739 in Blooming Grove Township, Pike County. N.T., 3/10/16, at 7-8. Trooper Scochin observed a 2002 Pontiac Grand Prix driving in the northbound lane, which was "consistently moving over the double yellow line and white fog line multiple times." **Id.** at 8; **see also id.** at 11, 13, 15. Trooper Scochin also noted that Palmer was not speeding, did not make another vehicle take corrective action, and did not make an abrupt lane

- 6 -

change. *Id.* at 12-14, 19. Trooper Scochin's observations were confirmed by a motor vehicle recording in his vehicle. *Id.* at 19. Due to his training and observations, Trooper Scochin believed that the driver of the vehicle, Palmer, was under the influence of alcohol or drugs. *Id.* at 8-9; *see also id.* at 9 (wherein Trooper Scochin states that in his training, detection of a potential DUI driver would be swerving over lines, lane changing, sudden stops, sudden turns, and alternating speeds). Trooper Scochin initiated a stop of the vehicle to investigate his suspicion. *Id.* at 8, 10.

Our review reflects that Trooper Scochin stopped Palmer's vehicle due to suspicion of DUI. Such a violation requires further investigation and, in order to initiate a legal stop, Trooper Scochin would have needed to possess reasonable suspicion. *See Chase*, 960 A.2d at 116; *Feczko*, 10 A.3d at 1291. Trooper Scochin's observation of Palmer's erratic driving, including weaving and moving over the double yellow line and white fog line on multiple occasions, was sufficient to impart reasonable suspicion warranting the stop of Palmer's vehicle.[2] *See Sands*, 887 A.2d at 272 (stating that police officer had reasonable suspicion to perform traffic stop to investigate suspected DUI where officer witnessed appellant's vehicle spotted weaving early in the morning and crossing the fog line three times); *see also Commonwealth v. Fulton*, 921 A.2d 1239, 1243 (Pa. Super. 2007) (holding that trooper, with

---

[2] Our own independent review of the motor vehicle recording, which was included in the record, confirms Trooper Scochin's observations.

five years of law enforcement experience, had reasonable suspicion to stop appellant's vehicle where he observed the appellant swerve out of his lane of travel three times in 30 seconds on a road shared by oncoming traffic). Thus, the trial court did not err in refusing to suppress the evidence.[3]

In his second claim, Palmer contends that the verdict of DUI was against the weight of the evidence. Brief for Appellant at 18, 23. Palmer argues that his DUI conviction was based upon Trooper Scochin smelling alcohol on his breath and Palmer's weaving in his lane of traffic. *Id.* at 20, 22; *see also id.* at 18-19. Palmer asserts that it shocks the conscience that he was found to be incapable of safe driving, where there was no evidence that he crossed lanes of traffic, was speeding, and refused to stop or failed the walk and turn. *Id.* at 20; *see also id.* at 20, 22, 23 (wherein Palmer did not provide a breath sample). Palmer claims that while Trooper Scochin smelled alcohol on his breath, he did not exhibit any other signs of intoxication. *Id.* at 20-21. Palmer further claims that he passed the walk and turn test, and the use of his arms during the one-leg stand test did not demonstrate a failure to pass the test. *Id.* at 21-23. Palmer also argues that he stopped his vehicle safely and

---

[3] We note that the trial court, in denying the Motion to Suppress, found that Trooper Scochin had *probable cause* to stop the vehicle to investigate the DUI. *See* Order, 5/12/16, at 3 (unnumbered); *see also* Trial Court Opinion, 9/12/17, at 5-6. Despite the trial court's application of the wrong standard, we may affirm the trial court's decision on any legal basis. *See* ***Commonwealth v. Torres***, 176 A.3d 292, 296 n.5 (Pa. Super. 2017).

cooperated with Trooper Scochin.  *Id.* at 22.[4]

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.  In order for an appellant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

*Commonwealth v. Mucci*, 143 A.3d 399, 411 (Pa. Super. 2016) (citations and quotation marks omitted).

To be convicted of DUI-general impairment, "[a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle."  75 Pa.C.S.A. § 3802(a)(1).

> The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include but are not limited to, the following:  the offender's actions and behavior, including

---

[4] Palmer properly preserved his claim in his Post-Sentence Motion.  *See* Pa.R.Crim.P. 607(A).  However, we note that in his Rule 1925(b) Concise Statement, Palmer argued that the trial court "entered a verdict against the weight of the evidence in that a reasonable doubt existed from both the evidence presented and a lack of evidence presented from the Commonwealth requiring a verdict of not guilty."  Concise Statement, 8/8/17.  It is well-noted that "a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all."  *Commonwealth v. Freeman*, 128 A.3d 1231, 1249 (Pa. Super. 2015) (citation omitted); *Commonwealth v. Reeves*, 907 A.2d 1, 2 (Pa. Super. 2006) (noting "statements in Rule 1925(b) that 'the verdict of the jury was against the evidence,' 'the verdict of the jury was against the weight of the evidence,' and 'the verdict was against the law' were too vague to permit adequate review") (citation omitted).  Nevertheless, despite Palmer's vague argument in his Rule 1925(b) Concise Statement, we will address his claim on appeal.

manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech. Blood alcohol level may be added to this list, although it is not necessary and the two hour time limit for measuring blood alcohol level does not apply.... The weight to be assigned these various types of evidence presents a question for the fact-finder, who may rely on his or her experience, common sense, and/or expert testimony. Regardless of the type of evidence that the Commonwealth proffers to support its case, the focus of subsection 3802(a)(1) remains on the inability of the individual to drive safely due to consumption of alcohol—not on a particular blood alcohol level.

*Commonwealth v. Segida*, 985 A.2d 871, 879 (Pa. 2009); *see also Commonwealth v. Mobley*, 14 A.3d 887, 890 (Pa. Super. 2011) (noting that "[t]he Commonwealth may prove that a person is incapable of safe driving through the failure of a field sobriety test.").

Here, Trooper Scochin observed Palmer swerving over the yellow center line and the white fog line multiple times. N.T., 8/2/16, at 6-7. After Trooper Scochin initiated a traffic stop, he noticed Palmer smelled of alcohol. *Id.* at 8; *see also id.* at 10 (wherein Palmer admitted to Trooper Scochin that he had been drinking). Thereafter, Palmer failed the one-leg stand field sobriety test. *Id.* at 10-11, 12. Based upon his training, Trooper Scochin stated that Palmer was under the influence of alcohol to the extent that he was incapable of safely driving the vehicle. *Id.* at 12-13.

The trial court weighed the evidence and found that Palmer committed DUI. *See Commonwealth v. Giron*, 155 A.3d 635, 638 (Pa. Super. 2017) (stating that a police officer's "testimony is sufficient to prove the elements of

DUI-general impairment."). We decline Palmer's invitation to assume the role of the fact-finder and to reweigh the evidence on appeal. Based upon the credible evidence, we conclude that the trial court did not abuse its discretion in denying Palmer's weight of the evidence challenge.

Based upon the foregoing, we affirm Palmer's judgment of sentence.[5]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/13/18

---

[5] We note that enhanced penalties for a refusal to consent to a breath test do not violate the holding in **Birchfield v. North Dakota**, 136 S. Ct. 2160 (2016). **See Giron**, 155 A.3d at 640 n.13 (noting that **Birchfield** "does not prohibit a driver from being subjected to enhanced penalties under sections 3803 and 3804 for refusing to provide a breath test."); **see also Birchfield**, 136 S. Ct. at 2184 (stating that "the Fourth Amendment permits warrantless breath tests incident to arrests for drunk driving. The impact of breath tests on privacy is slight[.]").